125   647
 66a  267
125   647
151   356
125   647
s153   83
153   87
125   647
163   232

TATUM, *Trustee, Plaintiff in Error*, v. THE CITY OF
ST. LOUIS.

### Division One, December 22, 1894.

1. **Ejectment:** PLEA OF STATUTE OF LIMITATIONS: POSSESSION. The
plea of the statute of limitations in ejectment admits possession by
the defendant at the commencement of the suit.

2. **Land:** ACCRETIONS: ARTIFICIAL OBSTRUCTIONS: RIPARIAN OWNER.
The fact that accretions are caused, wholly or in part, by obstructions
placed in the river by artificial means, does not prevent the riparian
owner from acquiring title thereto.

3. ———: MARRIED WOMAN: UNACKNOWLEDGED DEED. An unacknowl-
edged deed by a married woman to a city is void as a dedication
where the statute authorizes her to convey her estate in land only by
deed duly acknowledged.

4. ———: ISLAND: ACCRETION. An accretion to an island formed in
the Mississippi river belongs to the owner of the island and not to the
owner of the shore.

5. ———: LICENSE: NON-USER. An executory license after forty years
of non-use will be deemed to have been revoked; especially where
the licensee did not take possession of the land and its use by the
licensor has been inconsistent with the existence of the license.

6. **Deed**: LOT: STREET: EASEMENT. The conveyance of a lot facing on a street set apart in the plat for the use of the abutting owners conveys only an easement in the street.

7. **Ejectment**: EASEMENT IN THIRD PERSON. An outstanding easement in land in a third person does not bar recovery thereof in ejectment.

*Error to St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

REVERSED AND REMANDED.

*Leverett Bell* for plaintiffs in error.

(1) The evidence establishes that the land sued for was created by accretion to the Missouri shore of the river. *Campbell v. Laclede Co.*, 84 Mo. 372; *St. Clair County v. Livingston*, 23 Wall. 66; *St. Louis v. Railroad*, 114 Mo. 13; *St. Louis v. Lemp*, 93 Mo. 477; *Public Schools v. Risley*, 40 Mo. 356; *Le Beau v. Gaven*, 37 Mo. 556; *Smith v. Public Schools*, 30 Mo. 290; *Benson v. Morrow*, 61 Mo. 345; *Jones v. Soulard*, 24 How. 41. (2) The title under the Brazeau concession extended to the Mississippi river on the east and covered all the land to the water's edge, and the city of St. Louis could not, nor could any person, by filling at the river front or by building dykes, deprive the plaintiffs of their riparian rights. *Railroad v. Illinois*, 146 U. S. 387; *St. Louis v. Rutz*, 138 U. S. 226; *Wilkinson v. Dock Company*, 102 Mo. 140. (3) A complete record title from the Spanish government in 1786 by inheritance and proper conveyances was shown in the plaintiffs. (4) No outstanding title was shown, nor title in the city of St. Louis. *Moses v. Dock Company*, 84 Mo. 242; *Bartlett v. O'Donoghue*, 72 Mo. 563; *Goff v. Roberts*, 72 Mo. 570; *Hoskinson v. Adkins*, 77 Mo. 537; 2 R. S. 1855, pp. 1114, 1115, sections 22, 31. (5) No question can be made on the statute of limita-

tions.   The action was commenced in 1880, and the plaintiffs were in possession in 1874.   *Wilkinson v. Dock Company*, 102 Mo. 130; *Pim v. St. Louis*, 122 Mo. 654.   (6)   The court below erred in refusing the instruction asked by the plaintiffs and in giving the instruction given on its own motion.

*W. C. Marshall* for defendant in error.

(1)   Defendant's instruction for a nonsuit should have been given.   Inasmuch as ejectment is a possessory action, it was essential to the plaintiff's case to show that the defendant was in possession of the property at the time the action was begun.   R. S. 1889, sec. 4633; *Clarkson v. Stanchfield*, 57 Mo. 573; *Bledsoe v. Simms*, 53 Mo. 305.   (2) The land in controversy never was part of lot 4 of United States Survey number 3078, nor is it an accretion thereto, but is made up partly, of what was formerly Duncan's Island, and partly, by filling the east half, east of the thread, of the slough or channel which formerly separated Duncan's Island from the main land.   *Wilkinson v. Dock Company*, 102 Mo. 130; *Pim v. St. Louis*, 122 Mo. 654. The land in controversy is not an accretion to plaintiff's concession and confirmation.   *St. Clair Co. v. Lovingston*, 23 Wall. 46; *St. Louis v. Railroad*, 114 Mo. 21.   (3)   The city is entitled to an easement in the land for a public wharf by virtue of the license granted by plaintiffs to the city in 1851.   *Moses v. Dock Company*, 84 Mo. 246.   Defendant never contended that this instrument was a deed.   It is a license and, as such, does not need to be acknowledged or recorded.   It conveys no interest in land, but is an authority to do a particular act or series of acts upon another's land without vesting any estate therein. *Cook v. Stearns*, 11 Mass. 533; *Thomas v. Sorrell*,

Vaughn, 351; *Coleman v. Foster*, 1 H. & N. 37; *Wheeler v. Rowell*, 7 N. H. 515; *Harmon v. Harmon*, 61 Me. 222; *Railroad v. Jarrell*, 60 Tex. 267; *Druse v. Wheeler*, 26 Mich. 189; *Baker v. Railroad*, 57 Mo. 265. This license has never been revoked. (4) Plaintiffs have no title to the land in controversy, but there is, as to the plaintiffs, an outstanding title in Thomas Marshall under the deed from plaintiffs to him, dated May 28, 1859. *Dunlap v. Henry*, 76 Mo. 106; *Foster v. Evans*, 51 Mo. 39; *Dunn v. Miller*, 75 Mo. 260. (5) This action was not begun within ten years from the date the alleged cause of action accrued.

MACFARLANE, J.—The action is ejectment to recover possession of a parcel of land in the city of St. Louis fronting three hundred and ninety-eight feet on the Mississippi river, and having a depth back of three hundred and seven feet. The land is claimed by the city as part of its public wharf. The answer was a general denial and a plea of the statutes of limitation. The case was tried to the court without a jury, and a verdict and judgment was rendered for defendant, and plaintiff appealed.

Plaintiff claims title through concessions made to Joseph Brazeau, and confirmation thereof by act of congress in 1836. These concessions were bounded on the east by the Mississippi river, making a frontage on the river of twelve arpens. Plaintiff, who sues as trustee for Mrs. Virginia Lynch, claims title to the land in question as being accretions to the land so conceded and confirmed.

Without tracing the title from Brazeau, as was done on the trial, it will be sufficient to say that, in 1836, the original concessions were divided into five lots, each of which fronted three hundred and ninety-eight and one half feet on the Carondelet road, now

avenue, and extended east to the river, and John B. Douchouquette about that time became the owner of lot 4 of said division.   At this time the distance from Carondelet avenue to the river was about eighteen hundred feet, while at the trial it was about twenty-eight hundred feet.   There was, consequently, about one thousand feet between the east line of the lot, which was then the river bank, and the river bank as it is at present.   The land in dispute is a part of this added land.   In 1839 the west half of all five of these lots was subdivided into an addition to the city. Columbus street running north and south through the center of these lots formed the eastern boundary of the addition.   In 1850 the title of that part of lot 4 lying between Columbus street and the river was vested as follows:  Mrs. Lynch held an estate for life in the whole and an undivided one fourth of the remainder in fee;   and Victoria Douchouquette, now Victoria Whyte, an undivided three fourths of the remainder in fee.   On May 17, 1870, by proper deeds, the title of Mrs. Lynch was vested in Joseph T. Tatum as trustee for her.   Since the commencement of this suit the interest of Mrs. Lynch has been assigned to Mrs. Whyte, who has been substituted as plaintiff.

The evidence showed that as early as 1845 an island, known as Duncan's island, formed in the river opposite the land comprising the original Brazeau concession, but it is conflicting as to whether the southern end thereof extended as far south as the lot in question.   Originally, a part, at least, of the channel of the river flowed between the island and the Missouri shore.   This part of the channel subsequently became a mere slough and dykes were run out from the main shore connecting it with the island.   It does not appear that any of these dykes were built as far south as said lot 4.   The slough was subsequently filled entirely

and the river bank was changed to the east side of the island. As has been said, the land thus formed extended east from plaintiff's original boundary about one thousand feet. Main street was established over this new-made land and the river front was declared by an ordinance of the city to be a public wharf. The land claimed in this suit is a part of that dedicated by the city as a wharf, but the evidence fails to show any improvement as such.

Much evidence was introduced for the purpose of proving that the slough between the island and the shore was filled, and the new land formed, by means of the obstruction of the water by the dykes, by the construction of the Iron Mountain railroad on trestles along the slough, by filling with dirt taken from other portions of the road, by filling by the city and constructing the wharf.

Defendant claims on this appeal that: *First.* It was not shown on the trial that defendant was in possession of the land sued for. *Second.* That the action is barred by the statutes of limitation. *Third.* That the land is not an accretion to plaintiff's original tract. *Fourth.* That the city is entitled to an easement in the land for a public wharf by virtue of a license conferred upon it by the plaintiffs in 1851. *Fifth.* That an outstanding title in Thomas Marshall was shown.

I. At the conclusion of plaintiff's evidence in chief, defendant prayed the court to nonsuit him, for the reason that there was no evidence that it was in possession of the property at the commencement of the suit. This prayer was properly denied, for the reason that the possession of defendant was, by the plea of the statute of limitation, substantially admitted. By this plea defendant states "that it has been in open, notorious, continuous, peaceable and adverse possession of the

premises described in the petition since, to wit, 1850, claiming to be the owner thereof, against the plaintiffs and all other persons." Under this plea, possession at the commencement of the suit must be taken as admitted and proof thereof was unnecessary.

II. At the conclusion of the evidence the court made this finding or declaration of law: "The proposition that the land in question was formed by natural accretions to plaintiff's land on the main shore is not proven by the evidence." No other declarations of law were asked by either party, or given by the court.

The ground upon which the court reached its conclusion is not left in doubt. Plaintiff's only claim of title to the land was that it was formed by accretions to his original tract. The finding of the court, as stated, involved this proposition of law: If the land in question was not formed by natural accretions to his land on the main shore, plaintiff could not recover. If this declaration announced a correct principle of law, and there was substantial evidence tending to prove that the land was not formed by natural accretions, the finding would be as conclusive on appeal as the verdict of a jury would have been.

The evidence tended to prove that the land was formed against the bank of the river opposite lot 4, by reason of artificial dykes and other obstructions to the water between Duncan's island and the main shore, and by the filling of the slough by the railroad company and the defendant city. The weight of the evidence was, at least, to the effect that neither the island nor slough, at the time the improvements were commenced, extended as far south as plaintiff's land.

In view of the evidence we must assume that the court distinguished between such accretions as are formed by obstructing the flow of the water or chang-

ing the current by artificial means, and such as are formed without artificial interference with the banks or the natural flow of the water. The qualification made by the word natural, as used in the finding, clearly indicates this distinction. We think the law makes no such distinction. The riparian owner is entitled to the land formed by gradual and imperceptible accretions from the water, regardless of the cause which produced it. This right he can not be deprived of by the acts of others over whom he has no control, and for which he is in no way responsible. It was pertinently said by Mr. Justice Swayne in *St. Clair Co. v. Lovingston*, 23 Wall. 66: "It is insisted by the learned counsel for the plaintiff in error that the accretion was caused wholly by obstructions placed in the river above, and that, hence, the rules upon the subject of alluvion do not apply. If the fact be so, the consequence does not follow. There is no warrant for the proposition. The proximate cause was the deposits made by the water. * * * Whether the flow of the water was natural or affected by artificial means is immaterial." See, also, *Halsey v. McCormick*, 18 N. Y. 149; 3 Washburn on Real Property, *353.

From the evidence and declaration of law given by the court, it is evident that the court took a different view of the law, and we must hold that error was committed in using and applying the word "natural" to qualify the accretions to which plaintiff would be entitled.

III. The evidence showed very conclusively that Duncan's island formed in the midst of the river many years ago, and for a time the navigable part of the river was between it and the main shore. The evidence also has some tendency to prove that the land now in dispute constitued a portion of the island, or was accretions to the island, rather than to the shore.

If, on a new trial, either proposition should have proven true, then plaintiff could have no claim to it as accretion. These principles are well settled in this state. *Benson v. Morrow*, 61 Mo. 347; *Buse v. Russell*, 86 Mo. 211; *Naylor v. Cox*, 114 Mo. 232; *Rees v. McDaniel*, 115 Mo. 145; *Cooley v. Golden*, 117 Mo. 48.

IV. Was the judgment for the right party, regardless of the error committed? Defendant on the trial read in evidence a paper signed by Mr. and Mrs. Lynch, dated in 1851, which by its terms gave, granted and conveyed to the city of St. Louis the right to open certain named streets, and authorized the said city to locate and construct, on dry land, held or claimed by them, a wharf two hundred and sixty-five feet wide, designated on accompanying map, "to have and to ·hold the same, as the same is established in ordinance number 2596, for the use of wharf, to be under the entire control and management of said city." This paper was duly signed by both Mr. and Mrs. Lynch, but was not sealed or acknowledged by either of them.

By ordinance number 2596, approved March 29, 1851, a wharf from Plum street to the southern limits of the city was established. This wharf as described in the writing and ordinance would include a portion of the land in dispute. The written instrument, not having been acknowledged by Mrs. Lynch, is void as a release, or dedication as to her. The statute in force at that time gave her no power to convey her interest in land, the legal estate of which she held, except by deed duly. acknowledged. *Hoskinson v. Adkins*, 77 Mo. 538.

Whether the instrument would operate as a license, as claimed, need not be considered, as it does not appear that the city has ever taken possession under it and improved the property as a wharf. After forty

years of nonuse we may reasonably assume that the license, if one was given, has been revoked.   Indeed, since the date of the alleged license it very conclusively appears from the evidence that plaintiff has made such use of the property as implies a revocation thereof. The evidence shows quite conclusively that the property was leased by plaintiff for a number of years subsequent to 1851, and was used by the lessee in a manner inconsistent with its use by the city as a wharf.

The case of *Moses v. Dock Co.*, 84 Mo. 244, is cited by counsel for defendant, as sustaining his position that the instrument would operate as a license.   It will be seen that, though in that case the same instrument was under review, it was legally executed by the parties therein interested, and it was held that, inasmuch as the city took the undisputed possession of the property, through its lessees, there was a complete dedication. It was also declared, as a fact deduced from the evidence in that case, that "the property had at all times since 1859 been treated by all parties as a part of the wharf.   There was no question in respect to an executory and unused license in that case.

"A mere license may exist by parol, and ordinarily is not assignable, and is revocable, unless it has been executed and the party has incurred expense on the faith of it, so that he would be injured by the revocation." *Fuhr v. Dean*, 26 Mo. 116; *Baker v. Railroad*, 57 Mo. 272, and cases cited.

V.   It appears from the evidence that, in 1855, in a proceeding for partition, that part of lot 4 lying between Columbus street and Front street, was subdivided by commissioners into lots and streets.   Front street was at the time the west boundary of the original city wharf.   In 1859 Lynch and wife conveyed to Thomas Marshall certain lots assigned to them by the commissioners, which abutted on Front street.   It is

insisted now that this conveyance carried the title of the grantee to the river bank, and included the land in question, and, therefore, an outstanding title was shown to be in Marshall.

A plat of the subdivision was filed by the commissioners with their report. This plat showed Front street as having a width of one hundred and forty feet, and a wharf adjoining and next the river, having a width of one hundred and twenty-five feet. The certificate of the commissioners written upon the plat declares that Front street and the wharf, "are opened for the sole and special use and benefit of the owners of the several lots fronting thereon, and are not declared or set apart as public highways or for public use." The land in suit is included in the wharf as shown by the plat.

A sale to Marshall was of designated lots. The eastern boundary of these lots was Front street, and the title of Marshall under his deed did not extend beyond this boundary. *Ellinger v. Railroad,* 112 Mo. 526; *St. Louis v. Railroad,* 114 Mo. 22, and cases cited. Marshall, as the owner of these lots, has a mere easement in Front street and the wharf, but this right is no bar to an action of ejectment against a stranger. *St. Louis v. Railroad, supra.*

The question of adverse possession was not passed upon by the trial court, and we will not consider it here, further than to say that the evidence did not show, as a matter of law, that defendant had been in possession of the land for a period sufficient to bar the action. Judgment reversed and cause remanded. All concur.