## WHYTE v. THE CITY OF ST. LOUIS, Appellant.

### In Banc, December 19, 1899.

1. **Accretion**: PRODUCED BY ARTIFICIAL MEANS. The title of the riparian owner to an accretion is the same whether it is produced by natural movements of the river or produced by dykes placed in the river by a city, or by other artificial means.

2. **Dedication of Land to Public Use.** Dedication of land for public use is a matter of intention, and may be by grant or by parol, and may be established by evidence contained in a deed made directly to the municipality in which the land is situated or by deeds to private persons in which the rights of the public are recognized. Nor is it material whether such deed is a quitclaim or warranty.

3. ———: BY DEED: WHARF: ESTOPPEL. Where the owner of land in a deed conveying a part of it makes reference to other deeds which fix a wharf as a boundary, he thereby recognizes the existence of the wharf, and by so doing is estopped from denying the dedication of the land to public use.

Appeal from St. Louis City Circuit Court.—*Hon. Leroy B. Valliant*, Judge.

REVERSED.

*W. C. Marshall* for appellant.

(1) All the space lying east of the west line of the wharf as established by ordinance 5403 has been dedicated by deed as a public wharf. The portion thereof allotted by the lower court to the plaintiff was improperly adjudged to her. (a) Resting in estoppel, it is wholly immaterial whether the deed is a warranty deed or a quitclaim deed or arises out of matter *in pais*. Greenl. on Evid. (11 Ed.), sec. 27; Valette v. Bennett, 69 Ill. 632. (2) A vendor of one of two lots is not permitted to deny a representation to the purchaser that there was an alley between them, although the deed made no allusion to the alley. Kirkpatrick v. Brown, 59 Ga. 450. (3) One who fences off land as a street and sees others build

with reference thereto without warning, is estopped to deny a dedication of the street.   Chicago v. Wright, 69 Ill. 318; McShane v. Moberly, 79 Mo. 44; McCormick v. Baltimore, 45 Ind. 512; Beatty v. Kurtz, 2 Pet. 566.   (4) A person may be estopped to claim title to land by his conduct in reference thereto.   Yates v. Hurd, 8 Cal. 343; Pitcher v. Dore, 99 Ind. 175; Copeland v. Copeland, 28 Me. 524; Morey v. Ricketts, 62 Miss. 209; Railroad v. Ragsdale, 54 Miss. 200; Wells v. Pierce, 27 N. H. 303; DeHerques v. Marti, 85 N. Y. 609; Wendel v. Van Renssalaer, 1 Johns. Ch. 344; Fielding v. DuBose, 63 Tex. 631; Dickenson v. Colgrove, 100 U. S. 578; Greene v. Smith, 57 Vt. 268; 2 Herman on Estoppel, 1054.   (a)  'A familiar example of this is a parol dedication of land.   Lee v. Lake, 14 Mich. 12; Baker v. Johnston, 21 Mich. 319.   (b)   An estoppel *in pais* affecting the title to land is available at law.   Davis v. Davis, 26 Cal. 23; Brown v. Wheeler, 17 Conn. 345; Poole v. Lewis, 41 Ga. 162; Hale v. Skinner, 117 Mass. 474; Bigelow v. Foss, 59 Me. 162; Stevens v. Dennett, 51 N. Y. 324; Finnegan v. Carragher, 47 N. Y. 493; McAfferty v. Conover, 7 Ohio St. 99; Beaufland v. McKean, 28 Pa. St. 124; Spears v. Walker, 1 Head (Tenn.) 166; Hallovan v. Whitcomb, 43 Vt. 306; Mariner v. Railroad, 26 Wis. 84; Kirk v. Hamilton, 102 U. S. 68.

*Leverett Bell* for respondent.

(1)   The title of plaintiff under the Brazeau concession extended to the Mississippi river on the east, and covered all land and accretion to the water's edge, and the riparian rights of plaintiff and her predecessors in the title are not impaired nor destroyed by the fact that such accretion was created in whole or in part by dikes or other artificial structures placed by the city of St. Louis at the river front for the improvement of the harbor.   St. Louis v. Lemp, 93 Mo. 477; St. Louis v. Rutz, 138 U. S. 226; New Orleans v. U. S., 10 Peters, 662; Banks v.

Ogden, 2 Wall. 57; St. Clair v. Lovingston, 23 Wall. 46; Jefferies v. Land Co., 134 U. S. 178; Gifford v. Lord Yarborough, 5 Bing. 163; Tatum St. Louis, 125 Mo. 647; Railroad v. Illinois, 146 U. S. 387. (2) Where in a partition proceeding the commissioner's report and plat expressly state that a street and wharf shown on the plat at the river front of the property are not dedicated nor set apart as public highways, or for public use, but are open for the sole and especial use and benefit of the owners of the several lots fronting thereon, this constitutes no transfer to the public of the interests of the parties to the partition in said street and wharf and is no bar to an action of ejectment by one claiming title to said property under them. Ellinger v. Railroad, 112 Mo. 526; St. Louis v. Railroad, 114 Mo. 22; Tatum v. St. Louis, 125 Mo. 647. (3) The doctrine of estoppel has no application to the facts of this case. Tatum v. St. Louis, 125 Mo. 647; Anderson v. St. Louis, 47 Mo. 479; Moses v. Dock Co., 84 Mo. 242; Wilkinson v. Dock Co., 102 Mo. 130; Hoskinson v. Adkins, 77 Mo. 538; Bartlett v. O'Donoghue, 72 Mo. 563; Goff v. Roberts, Id. 570; Landis v. Hamilton, 77 Mo. 554; Lewis on Em. Dom., sec. 648; Childs v. Railroad, 117 Mo. 414; McBeth v. Trabue, 69 Mo. 642; St. Louis v. Laclede Co., 69 Mo. 197. (4) The statute of limitations is not a bar to this action. Wilkinson v. Dock Co., 102 Mo. 130; Pim v. St. Louis, 122 Mo. 654; Tatum v. St. Louis, 125 Mo. 657.

BURGESS, J.—This is ejectment to recover possession of a small tract of land in the city of St. Louis, described as follows:

"That parcel of land situate in the city of St. Louis and State of Missouri, in Duchoquette's Addition thereto, lying contiguous to the Mississippi river and opposite City Block 870 of said city, containing three hundred and ninety-eight feet and two inches along the Mississippi river, and running back therefrom three hundred and seven feet; bounded north by land

opposite City Block 869; east by the Mississippi river at low water mark and west by said City Block 870."

The suit was instituted on the seventeenth day of September, 1880, in the name of Joseph T. Tatum, trustee of Virginia Lynch, and Virginia Lynch, plaintiffs, v. The City of St. Louis, defendant. Subsequently to the commencement of the action the interest of Mrs. Lynch was assigned to the present plaintiff, Victoria D. Whyte, who was substituted as plaintiff.

The case was before this court on a former occasion under the style of Tatum v. St. Louis, 125 Mo. 647, when the judgment was reversed and the cause remanded. After the cause was remanded defendant filed an amended answer, in which it denied all allegations in the petition, pleaded the ten year statute of limitations, alleged that it had been in the open, notorious, adverse, continuous and exclusive possession of the land since 1851, claiming to be the owner thereof, and averring that plaintiff and those under whom she claims title were estopped by their acts and admissions from claiming the land.

The facts disclosed upon the last trial except as before stated were not materially different from the first, except there was some evidence tending to sustain the defense of estoppel, and are fully stated in that case.

The case was tried by the court, a jury being waived. At the request of plaintiff the court over the objection and exception of defendant declared the law to be as follows:

1. If the court shall find and believe from the evidence that the property sued for is west of the center thread of the slough that once existed between Duncan's island and the Missouri shore, provided that the court find that such slough existed, and that the same was formed by gradual accretions caused by natural or artificial means, against lot 4 of the Brazeau tract, then said property is a part of said lot 4.

2. If the court shall find and believe from the evidence that no filling was done in the river in front of lot 4 by the

Iron Mountain Railroad Company, then the operations of said company in no manner affect the issues in this case.

5.    If the court shall find and believe from the evidence that the Sectional Dock Company did not occupy any part of the property sued for prior to 1876, then the plaintiff's action is not barred by limitation.

6.    If the court shall find and believe from the evidence that in the partition proceedings of 1855, in evidence, between Mr. and Mrs. Lynch, and Victoria Duchouquette, it is expressly stated in the commissioner's report, and on the plat, that Front street and the wharf are not dedicated nor set apart as public highways or for public use, but are open for the sole and especial use and benefit of the owners of the several lots fronting thereon, then this constituted no transfer of the interests of the parties to said partition in said property to the public.

7.    The court declares the law to be that, under the conveyances in evidence on the part of the plaintiff, if the court believe the same to be genuine, and the proof of heirships, if the court believe the same to be true, the title to the shore lands to which it is claimed the premises sued for are an accretion, was fully vested in those under whom plaintiff claims title.

8.    The court declares the law to be that the deeds, read in evidence by the defendant, relating to property in block 870, do not constitute, nor does any of them, a defense of this action.

9.    The court declares the law to be that, under the evidence in this case, the plaintiff's action is not barred by limitation.

10.    The court declares the law to be that the title, under the Brazeau concession, extended to the Mississippi river on the east, and covered all the land and the accretions thereto to the water's edge, and the city could not, nor could any person, by filling up the river front, or by building dykes in the river,

deprive the plaintiff or her predecessors in the title of their riparian rights.

And over the objection and exception of plaintiff the court refused the following instructions:

3. If the court shall find and believe from the evidence that the defendant has not used the property in front of block 870 as a wharf, and has not built a wharf there, then it took nothing under the so-called license of 1851 signed by Mrs. Lynch and others, in evidence in this case.

4. If the court shall find and believe from the evidence that a bridge company occupied the premises sued for from 1871 to 1874, as tenant of Mrs. Lynch, and paid rent therefor, and used the same for storing stones, then this operated as a revocation of the so-called license of 1851 signed by Mrs. Lynch and others in evidence in this case.

11. The court declares the law to be that, under the pleadings and evidence, the plaintiff is entitled to judgment for the possession of the following described premises, namely: A lot of ground in Duchouquette's Addition to the city of St. Louis, bounded on the north by a line coincident with the north line of Douchouquette street, produced eastwardly to the Mississippi river, on the east by the Mississippi river; on the south by a line 398 feet two inches south of and parallel with the north line above mentioned, and on the west by the east line of block 870, and the plaintiff is further entitled to a judgment for such damage as the court may believe from the evidence she is entitled to, for the detention of said property from September 17, 1880, to the present time; and the monthly rents shall be established in said judgment at such sum as the court shall find and believe from the evidence the same are worth.

12. The court declares the law to be, that the acts and conduct of Henry C. Lynch, as shown by the testimony, during the time he was the owner of the premises in controversy, or any part thereof, from 1854 to 1870, both inclusive, do not

establish an estoppel against said Lynch, or against plaintiff claiming under him, or deprive plaintiff of any rights she may otherwise have to maintain this action.

Defendant asked the court to declare the law to be, "That upon the evidence adduced the plaintiff is not entitled to recover, and the judgment must be for defendant." The court refused to so declare the law, and the defendant duly excepted.

The court then found, that at the commencement of this suit Virginia Lynch, the original plaintiff herein, was the owner in fee and entitled to the possession of all that part of the land sued for which lies west of the west line of Front street and the wharf as established, and, defined by ordinance 2596 of the city of St. Louis, entitled: "An ordinance to provide for establishing and opening Main street and Front street and the wharf from Plum street to the southern limits of the city and for improving the same," approved March 29, 1851, and that the defendant was at the same time entitled to the possession of all of said land sued for which lies east of said west line of Front street and the wharf as so established and defined; and rendered judgment in favor of plaintiff for the possession of all that part of the land in question which lies west of the west line of Front street, and the wharf as established and defined by ordinance 2596 of the city of St. Louis entitled, "An ordinance to provide for establishing and opening Main street and Front street, and the wharf from Plum street to the southern limits of the city and for improving the same," approved March 29, 1851, and against the plaintiff for all the land sued for that lies east of said west line of Front street and the wharf as so established and defined.

Both parties appeal, but the plaintiff filed no bill of exceptions, so that so far as her appeal is concerned there is nothing before this court for review, save and except the record proper, and that seems to be free from error.

The Spanish concession of 1786 to Joseph Brazeau for

land fronting on the Mississippi river, passed the title to the land and all accretion thereto to him, and as the land for which plaintiff recovered judgment is embraced within that concession, and as she derived title from him, the judgment should be affirmed as to that land unless her right to its possession has been lost by reason of the statute of limitations, or she is estopped from claiming the same by reason of some act, or omission of her own, or of some one or more persons under whom she claims title. And it makes no difference that the accretion in question may have been produced by reason of dykes placed in the river by the city or by other artificial means. [Tatum v. St. Louis, 125 Mo. 647.]

In 1855, in a proceeding for partition, that part of lot four between Columbus street and the river which embraced the property sued for, was divided by commissioners into lots and streets, and it is expressly stated in their report and shown by the plat made by them as a part of said report, that Front street and the wharf are open for the sole and special use and benefit of the owners of the several lots fronting thereon, and are not dedicated nor set apart as public highways or for public use. There is, therefore, nothing in that proceeding tending to show an intention by the parties thereto to dedicate Front street or the wharf east of block 870, to public use.

Defendant contends that the circuit court erred in rendering judgment for the plaintiff for the property lying between the west line of Front street as located by ordinance 2596, and the west line of the wharf as established by ordinance 5403.

The first ground upon which this contention is predicated is that the judgment is erroneous because the property adjudged to plaintiff is not embraced in the description of the land described in the petition, but lies wholly west of the east line of block 870, as laid out on the plat accompanying the report of the commissioners in the partition suit, but as all the land sued for which includes that for which plaintiff recovered

judgment is east of the west line of the wharf as the same is defined by ordinance 5403, and between said line and the river, this contention is clearly untenable.

Another contention by defendant is that plaintiff's action was barred by the statute of limitations at the time of the commencement of this suit, and that the court committed error in declaring the law to be otherwise.

In support of this position defendant relies upon a number of ordinances adopted by the city, and various contracts for work in the river which were merely acts of ownership, and did not constitute possession as distinguished from ownership. Indeed when the case was here before while the court did not pass upon the question of adverse possession because not passed upon by the trial court, it said "the evidence did not show, as a matter of law, that the defendant had been in possession of the land for a period to bar the action." And this was the same view taken by the circuit court upon the last trial, which was clearly correct.

It is also claimed by defendant that all the space lying east of the west line of the wharf as established by ordinance 5403 was dedicated by deed as a public wharf, and that the portion thereof for which judgment was rendered by the lower court in favor of plaintiff, was improperly adjudged to her. This contention is based upon the following facts. In 1855, in said proceeding for partition of that part of lot four between Columbus street and the river which embraces the property in question, and which was divided by commissioners into lots and streets, Front street and the wharf were reserved for the sole and exclusive use of the owners of lots in block 870, abutting thereon, and inasmuch as Joseph T. Donovan and Joseph T. Tatum, trustee for Mrs. Lynch, owned all these lots, the title to all of Front street and the wharf was vested in Donovan and Mrs. Lynch, respectively, subject to the claims of the city, and the fact that on the 14th day of June, 1884, Joseph T. Tatum, trustee of Virginia Lynch, and Virginia Lynch and

Henry C. Lynch, her husband, conveyed to the St. Louis, Iron Mountain & Southern Railway Company all the lots from 53 to 64 inclusive of block No. 870, describing the property as beginning in the west line of the wharf at the northwest corner of ground owned by the Huse & Loomis Transportation Company, thence westwardly 304 feet and 8 3-4 inches, more or less, to the east line of Main street, thence along the north line of Main street 304 feet to the south line of ground owned by Joseph T. Donovan (being the one-fourth interest originally sold by Henry C. Lynch to Thomas Marshall, and finally being conveyed to Donovan), thence eastwardly along Donovan's southern line 304 feet and 8 3-4 inches, more or less, to a point in the west line of the wharf, thence southwardly along the west line of the wharf 304 feet to the place of beginning, and being bounded on the east by the wharf, on the south by Huse & Loomis Transportation Company, on the west by Main street, and on the north by Donovan.    And the further fact that on the 14th of February, 1888, after Mrs. Lynch became a widow, she made a second conveyance of the same property, describing it in the same way, to the St. Louis Iron Mountain and Southern Railway Company.

In the partition proceedings Front street and wharf were reserved for the sole and exclusive use of the owners of lots in block 870, abutting thereon, and the deed to the Iron Mountain and Southern Railway Company contains a reservation of any interest which Mrs. Lynch had in the property claimed by the city as a wharf, and also the right to claim damages against the city, and also refers to the fact that on the same day, Joseph T. Donovan sold lots 49, 50, 51, and 52, to the St. Louis, Iron Mountain and Southern Railway Company, while by the deed by Mrs. Lynch to the Iron Mountain and Southern Railway Company after she became discovert no reservation was made but described the property conveyed as a tract of land fronting 304 feet on the west line of the wharf by a depth of 304 feet and 8 3-4 inches to Main street.

But as we have said the proceeding in partition did not constitute a dedication of the wharf to the public because there was no intention to do so, as is shown by the express reservations of the wharf in the commissioners' report for the sole and exclusive use of the owners of lots in block 870; nor did the first deed to the Iron Mountain and Southern Railroad Company have that effect, because of a reservation of any interest that Mrs. Lynch had in the property. Dedication of land for public use is a matter of intention, and it is clear that no such intention existed in either of the instances cited.

But a different construction must be placed on the deed of Mrs. Lynch to the Iron Mountain and Southern Railroad Company of date February 14, 1888, in which the land deeded is bounded on the east by the land in suit, describing it as beginning at a point on the west line of the wharf, etc., and along the west line of the wharf to the point of beginning, and therein reference is made to other deeds which fix the wharf as a boundary, thereby recognizing the existence of the wharf, and by so doing, she is estopped from denying it. It is true that this deed is a quitclaim only, but that makes no difference, as a grantor in a quitclaim deed is as much estopped thereby from claiming any interest in or growing out of the property conveyed which existed at the time of the execution of the deed, as if it were a warranty. Besides it is not necessary that the dedication of land for public use should be by grant, but it may be and often is by parol, and may be established by evidence contained in deeds made directly to the municipality in which the land is situated, "or by deeds to private persons in which the rights of the public are recognized." [9 Am. and Eng. Ency. of Law (2 Ed.), 37.] The dedication was a common law, as distinguished from a statutory dedication, and when made enured to the public as well as to the grantee in the deed. [Heitz v. St. Louis, 110 Mo. 618.]

On the last trial there was evidence adduced which tended to show that defendant did take possession under the license

of 1851 as early as 1853, and that between that time and 1870 it spent large sums of money in improving the property. It also appears that Mr. Lynch in 1862 put up a sign on the property as follows:   "This is a private landing; privilege of laying or landing here may be had by applying to H. C. Lynch," which was torn down by the defendant city some five years thereafter, and was never replaced, so that it can not be assumed, that the license was revoked by reason of nonuser.

Our conclusion is that the instruction asked by defendant in the nature of a demurrer to the evidence should have been given.

The conclusion reached renders it unnecessary to pass upon other questions raised by counsel in their briefs and argument.

The judgment is reversed.

*Gantt, C. J.,* and *Brace* and *Robinson, JJ.,* concur; *Marshall* and *Valliant, JJ.,* not sitting; *Sherwood, J.,* absent.