MENOMINEE RIVER LUMBER COMPANY, Appellant, vs. SEIDL
and another, Respondents.

*April 3—April 23, 1912.*

*Waters: Title to bed of lake: Pourprestures: Accretion and reliction:
Riparian owners: Right of access: Ejectment: Judgment.*

1. Where the title to the bed of a lake is in the state one cannot,
   by building up land or erecting a pourpresture therein, acquire
   such title.
2. If, by dredging, a riparian owner makes an embankment or island
   above the water in front of his land at a place below low-water
   mark, where the title to the bed of the lake is in the state, he
   acquires no title thereto, even though by reason of subsequent
   accretion or reliction his ownership may be extended over the
   space between his original shore line and such embankment
   or island.
3. Where the title to the bed of a lake is in the state, a riparian
   owner's right of access to deep water is an incorporeal right
   and cannot be recovered in ejectment.
4. Where in ejectment a riparian owner, alleging that he had title
   in fee simple and was entitled to possession of the premises in
   question, sought to recover an embankment which had been
   raised above the water by dredging in front of his land, but
   was unable to show title thereto because such title was in the
   state, a judgment dismissing the complaint on the merits was
   proper.

APPEAL from a judgment of the circuit court for Marinette
county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

This is an action of ejectment brought to recover a parcel
of land now claimed by plaintiff by accretion or reliction to
fractional section 9, town 30 north, range 24 east. The an-
swer was a general denial, the defense being possession. After
the proofs were in each party moved for a directed verdict.
The court directed a verdict for defendants. Judgment was
rendered accordingly, dismissing the complaint on the merits
with costs, from which judgment this appeal was taken.

The material established facts in this case are well stated by the learned trial court thus:

"Fractional section 9, assumed for the present to have been and be owned by the plaintiff, borders on Green Bay, and lies south of the mouth of the Menominee river. It projects east further than the bay shore line just south of it. Plaintiff's block 50, as shown on the village plat, was on the southeasterly point of said projection. The water for some distance south and east of that point is comparatively shallow, and for many years was largely occupied by a boom company under leases from the plaintiff of such rights as it had, as ground for storing and sorting logs. About three quarters of a mile south of block 50 there was a place estimated at two to three acres in extent, which, at times of low water, was above water, and at times covered, the level of the water varying several feet different years. It was known as Sand Point. Between that point and block 50 there was a space on which the water was more shallow than on either side of it. At the north end of this space and south of the plaintiff's shore line the water was deeper than further south. A steamboat dock was located on the east end of said lot 9, north of said block 50, and boats from the south reached that dock and the mouth of the river by coming up west of said shallow strip between it and the shore and through the deeper water at the north end of said shallow place and plaintiff's shore line. Said boom company in 1887–88 dredged a channel across the northerly end of said low place, throwing up the earth or sand on both sides eight to fifteen feet high, forming banks or dumps about sixty feet wide. This channel is several hundred feet from where the shore line around block 50 was at that time. The water where said channel was dug was at the time it was dug from one to two and more feet deep. After it was dug there was still a channel for boats drawing several feet of water between the north bank or dump and said block 50. The channel and open space east of said lot 9 was filled in with slabs and refuse from sawmills and made solid ground some distance. A large space south and southeast of said block 50, including said shallow space and said rafting channel, was surrounded by said boom company with piers, booms, and breakwaters. These

obstructions in the water and the storage of logs in said inclosed space interfered with the natural currents and flow of the waters, and caused bark and dirt to accumulate and be held there and cause accretions to the shore to a greater extent than if they had not been there. The open space between the plaintiff's shore line and the land made by dredging said channel became gradually filled up by accretions to the shore on each side, and the shallow ground south of said channel also became more shallow by deposits on it from the water. The levels of the waters in Green Bay, when not affected by winds, have varied different seasons as shown by records kept by the United States since 1860, of Lake Michigan, at Milwaukee, and other points, being at its highest stages from four to five feet higher than when at its lowest stages. These stages vary periodically. During one unusually low stage the space south from said channel was so dry as to permit a ball game upon it. During the past two years the water has been very low; the entire space between said made land and the plaintiff's former shore line as well as quite a distance south from said channel has been above water. Should the water return to its average level during the past fifty years these spaces would again be flooded. The regularity with which high and low stages of water in the lakes and bay have alternated makes it reasonably certain that the waters will again cover the space between the made land and plaintiff's former shore line. The only expert testimony on that question, that of United States engineers, was to the effect that it would.

"The contention of the plaintiff is that by accretions to the shore line of block 50 and reliction of the water therefrom, its title has extended as far out as land has been made. The defendants' contention is that the land occupied by them was never formed by accretions or reliction, but existed for many years as a spot of dry land, not connected with the shore, an island although created by artificial means, not by natural action of the water. There is no question as to the fact. The sand thrown up by the dredge made a bank estimated from eight to fifteen feet high, about sixty feet wide, which, by action of wind and seas, was spread until it formed a tract of land high and dry, embracing all the land in question."

It also appears from the established facts that the original meander line of fractional section 9, as shown by the govern-

ment survey of 1840, is nearly a quarter of a mile north of the land sought to be recovered in this action. In 1874 an addition was platted on said fractional section. At that time the shore line was a short distance south of the meander line, caused by natural accretion washed to the shore and by artificial filling done by plaintiff.

For the appellant there was a brief by *Wm. B. Quinlan,* attorney, and *Moses Hooper,* of counsel, and oral argument by *Mr. Hooper.*

For the respondents there was a brief by *M. C. Krause,* attorney, and *John E. Tracy,* of counsel, and oral argument by *Mr. Tracy.*

KERWIN, J. The main question involved in this case is whether the land in dispute and in possession of the defendants is owned by the plaintiff. The claim of the plaintiff is that it became such by accretion and reliction, although formerly the land was part of Green Bay, an arm of Lake Michigan, the title to which was in the state. Counsel insists that after plaintiff threw up the embankment the land in question was formed by the combined action of accretion and reliction and such land so formed connected on the shore side with the main land and became a part of it; that the dredging by plaintiff some years before so as to throw up the bank and thereby form an island some distance from the shore is immaterial, because the land made by accretion and reliction lay between the artificial island and the main land and included the artificial island. The learned counsel for plaintiff relies mainly upon the following authorities: *St. Clair Co. v. Lovingston,* 90 U. S. 46, 68, 69; *Lovingston v. St. Clair Co.* 64 Ill. 56; *Freeland v. Pennsylvania R. Co.* 197 Pa. St. 529, 540, 541, 47 Atl. 745; *Knudsen v. Omanson,* 10 Utah, 124, 131, 37 Pac. 250; *Priewe v. Wis. S. L. & I. Co.* 93 Wis. 534, 67 N. W. 918; 1 Farnham, Waters, 324, § 70; *Patterson v. Gelston,* 23 Md. 432, 447; Wiel, Water Rights, 939, § 901;

Id. 940, § 902, note 21, 942–944, § 904, note 14; *Union D., St. R. & T. Co. v. Brunswick,* 31 Minn. 297, 301, 17 N. W. 626; *Diedrich. v. N. W. U. R. Co.* 42 Wis. 248, 262; *Att'y Gen. v. Chambers,* 4 De G. & J. 55; *Lamprey v. State,* 52 Minn. 181, 53 N. W. 1139; *In re Hull & S. R. Co.* 5 M. & W. 327, 332; *People v. Warner,* 116 Mich. 228, 74 N. W. 705; *Holman v. Hodges,* 112 Iowa, 714, 84 N. W. 950; *Roberts v. Brooks,* 78 Fed. 411; *Tatum v. St. Louis,* 125 Mo. 647, 28 S. W. 1002; *Whyte v. St. Louis,* 153 Mo. 80, 54 S. W. 478; 19 Op. Att'y Gen. 149; Gould, Waters, §§ 155, 310, note 7; *Steers v. Brooklyn,* 101 N. Y. 51, 56, 4 N. E. 7; *Memphis v. Waite,* 102 Tenn. 274, 52 S. W. 161; *Adams v. Frothingham,* 3 Mass. 352, 362, 363; *Ledyard v. Ten Eyck,* 36 Barb. 102, 124, 125; *McLennan v. Prentice,* 85 Wis. 427, 444, 445, 55 N. W. 764; *Ill. S. Co. v. Bilot,* 109 Wis. 418, 425, 84 N. W. 855, 85 N. W. 402; *Saunders v. N. Y. C. & H. R. R. Co.* 144 N. Y. 75, 84, 38 N. E. 992; *People ex rel. Blakslee v. Comm'rs,* 135 N. Y. 447, 450, 32 N. E. 139; *Washougal & L. T. Co. v. Dalles, P. & A. Nav. Co.* 27 Wash. 490, 499, 68 Pac. 74; *Hall v. Hobart,* 186 Fed. 426, 430–433.

The plaintiff's contention cannot be sustained, as the authorities hereinafter cited, we think, fully demonstrate.    To sanction such a rule would be to hold that a riparian owner could by artificial means acquire title to the bed of a lake far below the shore which belonged to the state.    The disputed tract is the dump or bank made by plaintiff in so dredging the channel in the bay as to raise the land several feet above the level of the bay.    No title could be acquired by such acts. The title still remained in the state, and, in order to recover, it was incumbent upon plaintiff to prove title in itself.    *Ill. S. Co. v. Bilot,* 109 Wis. 418, 84 N. W. 855, 85 N. W. 402; *Diedrich v. N. W. U. R. Co.* 42 Wis. 248; *Delaplaine v. C. & N. W. R. Co.* 42 Wis. 214; *Boorman v. Sunnuchs,* 42 Wis. 233.    One cannot by building up land or erecting structures

in a lake, the title to the bed of which is in the state, thereby extend his possession into the lake and acquire the state's title. *Diedrich v. N. W. U. R. Co., supra; Austin v. Rutland R. Co.* 45 Vt. 215 ; *Dana v. Jackson S. W. Co.* 31 Cal. 118 ; *People ex rel. Blakslee v. Comm'rs,* 135 N. Y. 447, 32 N. E. 139. The law relating to wharves and docks in aid of navigation does not apply in this case.   1 Farnham, Waters, §§ 118–120.

Point is made by counsel for appellant that the plaintiff acquired title by accretion and reliction in consequence of the filling up of the channel between the embankment and the shore, and that the level of the natural soil underlying the dredged bank came by accretion and reliction above the level of the surface of the lake, so that if the dredged bank were removed the underlying soil would have been land above water; while it is strenuously contended on the part of respondents that all the filling between the land in suit and the main land was caused by artificial means and in some degree by the acts of plaintiff, that it was not permanent and was not created by slow and imperceptible changes, and does not come within the rule of accretion and reliction, hence plaintiff has no title to it.   *State v. Thompson,* 134 Iowa, 725, 111 N. W. 328 ; *Sapp v. Frazier,* 51 La. Ann. 1718 ; *Stover v. Jack,* 60 Pa. St. 339 ; 1 Farnham, Waters, p. 339, § 75a; *Saunders v. N. Y. C. & H. R. R. Co.* 144 N. Y. 75, 38 N. E. 992 ; *Allegheny City v. Moorehead,* 80 Pa. St. 118.   But whether this filling between the shore and the embankment was caused by natural or artificial means, or both, or was permanent or otherwise, or created by slow and imperceptible changes, or whether the plaintiff acquired any additions to its shore land by reason of such filling under the doctrine of accretion and reliction, we need not consider, because upon the established facts we are convinced that plaintiff acquired no title to the embankment in dispute by accretion, reliction, or otherwise. It was land raised in the bay below low-water mark, the title

to which was in the state and never became the land of the plaintiff.   *Diedrich v. N. W. U. R. Co.* 42 Wis. 248.

It is well settled that if the land in question were an island which arose from the water and afterwards became connected with the plaintiff's land by dry land, it would not become a part of the plaintiff's land.   *People v. Warner,* 116 Mich. 228, 74 N. W. 705; *East Omaha L. Co. v. Hansen,* 117 Iowa, 96, 90 N. W. 705; *Holman v. Hodges,* 112 Iowa, 714, 84 N. W. 950; *Cooley v. Golden,* 117 Mo. 33, 23 S. W. 100; *Bigelow v. Hoover,* 85 Iowa, 161, 52 N. W. 124.   Clearly the present case is no stronger than that of an island arising from the water.   One cannot acquire title to the bed of a lake or public waters by the erection of a pourpresture.   So upon any theory this embankment constructed by plaintiff and remaining above the level of the bay did not become the land of the plaintiff.   *Diedrich v. N. W. U. R. Co., supra; Dana v. Jackson S. W. Co.* 31 Cal. 118; *Austin v. Rutland R. Co.* 45 Vt. 215; *People ex rel. Blakslee v. Comm'rs,* 135 N. Y. 447, 32 N. E. 139; *People v. Warner, supra; Cooley v. Golden, supra; Bigelow v. Hoover, supra.*

It is further argued by counsel for appellant that the plaintiff could recover, even if it did not have title, by virtue of its rights as a riparian owner to access to deep water.   In order to recover in this case it was incumbent upon plaintiff to prove title.   *Ill. S. Co. v. Bilot,* 109 Wis. 418, 84 N. W. 855, 85 N. W. 402.   Plaintiff did not seek recovery by force of possessory rights, but by force of title to the land sought to be recovered.   Its complaint is based upon the right to recover title to the land; and our statute, sec. 3077, Stats. (1898), provides that the plaintiff shall in his complaint set forth the nature and extent of the interest which he claims, "whether in fee, dower, for life or for a term of years. . . ."

It has been held that recovery cannot be had in ejectment for a mere easement, because ejectment will lie only for things corporeal.   Washburn, Easements, 3; *Racine v. Crotsenberg,*

61 Wis. 481, 21 N. W. 520.    The right of access by a riparian owner to deep waters, where the title to the bed is in the state, is an incorporeal right and cannot be recovered by a riparian proprietor in ejectment.    *Racine v. Crotsenberg, supra; Le Blond v. Peshtigo,* 140 Wis. 604, 123 N. W. 157.

Appellant complains because judgment was entered dismissing the complaint on the merits, and insists that it should have been a dismissal without prejudice.    The complaint alleges that plaintiff has an estate in fee simple in the lands in question and is entitled to possession thereof.    The plaintiff's alleged title was the basis of its right to recover and it was determined that it had no title.    The defendants were therefore entitled to judgment on the merits.    The statute relating to judgments in ejectment actions so provides.    "The judgment, after trial, shall be in accordance with the verdict or decision of the court."    Sec. 3086, Stats. (1898).

We have carefully examined the cases cited by the learned counsel for appellant and cannot see that they control this case.    We are convinced that the judgment of the court below is right and should be affirmed.

*By the Court.*—The judgment is affirmed.