## Shoenberger and Others *versus* Baker.

1. From the time that a *caveat* is entered, until the right to the patent is determined in ejectment, neither party, not being in actual possession, has such a title as will sustain an action of trespass against the other.   Therefore, though a party has the decision of the board of property in his favor, he cannot maintain trespass on such title till the determination of the ejectment instituted by the opposite party.

2. One who makes the first application for vacant land and obtains a warrant is to be preferred over another who makes an application for the same land, though the former knew when he had his application made out, that the other person had an application for the land prepared previously on the same day, the first applicant not being guilty of fraud.

ERROR to the Court of Common Pleas of *Indiana county*.

This was an action of trespass *quare clausum fregit* for digging and carrying away ore, brought by Elias Baker *v.* Peter Shoenberger, George S. King, and others.   This suit was brought on the 30th June, 1847.   It was tried before, and verdict was rendered for the defendants.   See a report of the case in 6 *Harris* 138, &c., under the name of Baker *v.* King.

Elias Baker, the plaintiff, exhibited a warrant to William D. McKiernan, dated 6th August, 1844, a survey in pursuance of it, dated 10th August and 13th and 14th September, 1844, for 59 acres 137 perches, covering the land whereon the alleged trespass was committed.   McKiernan's application was executed before two justices of the peace on the *evening* of the 3d August, 1844; he knowing at the time that David Stewart had an application for the same land prepared *previously on the same day*.   McKiernan enjoined secrecy as to his application, and had it forwarded expeditiously to Harrisburg and *first* presented; and the warrant was granted, as before stated.   McKiernan conveyed to Elias Baker by deed dated 5th December, 1846.

*Stewart's application* for a warrant for 50 acres, under which the defendants claimed, was made out before two justices of the peace on the *morning* of the 3d August, 1844, and *a warrant* was obtained thereon on the 7th of that month, viz., the next day after the warrant by McKiernan.   No survey was made under this warrant till the 15th and 16th September, 1848, after Stewart had sold his claim to King and Shoenberger.   Stewart's warrant called for fifty acres of unimproved land adjoining other land of his purchased from Samuel Mizner, lands of Clark, Morgan, and Davis.

A *caveat*, dated 9th August, 1844, and another, dated 11th September, 1844, were entered on part of Stewart, against the acceptance of the McKiernan survey.   It was alleged in one or both of the *caveats*, that the right to the land was vested in *Stewart*

by virtue of an alleged actual settlement commenced about the year 1822, by Thomas Bracken, who sold to Samuel Mizner, from whom Stewart purchased by article of agreement, dated 1st August, 1844. He did not, in the *caveat*, claim under *his warrant* of the 7th August, 1844.

On 2d March, 1846, a decision of the board of property was made in favor of the acceptance of the McKiernan survey. On the 3d April, next following, an ejectment was brought to June Term, 1846, by David Stewart, against McKiernan and Elias Baker. This writ was not served. An *alias* writ was issued to September Term, 1846. This writ was returned on 3d July, 1847, as served on McKiernan, on 29th August, 1846. It was not served on Baker. The action of ejectment had not been determined when this action of trespass was tried. After the ejectment was instituted McKiernan conveyed to Baker, by deed dated 5th December, 1846.

It was alleged that *Bracken*, through whose alleged improvement or settlement Stewart also preferred a claim to the land in dispute, designated his boundaries in 1822, by a survey containing 262 acres and 107 perches, embracing *a part* of the land in dispute which was covered by the surveys both of McKiernan and Stewart. Stewart, as before alleged, on 1st August, 1844, purchased from Mizner, who had purchased from Bracken. Stewart put up a cabin on the land in dispute, and it was alleged, on part of the defendants, that he had a tenant residing in the cabin on 5th August, 1844, one day before the date of the warrant to McKiernan; that the land was occupied at intervals, by different persons, who were engaged in making roads and digging ore till the commencement of this suit.

It was alleged in the counter statement, that the land was not occupied for any other purpose than as stated above.

On the trial, Thomas H. Bracken, called on part of the defendants, testified, in substance, that "In the evening, quite late, he gave one of his horses to go for a person to vouch for McKiernan as to the land in dispute." He said McKiernan went ahead to have the application ready; that he expressed great anxiety about Stewart making an application; he enjoined secrecy on us; he wished us not to say anything about his being there; that he understood Stewart was about taking out his application that day. As he was in pursuit of the same object, we went to town. He further said that he afterwards met McKiernan, who said that Stewart had got ahead of him, but that he would take out an application, and send it to his brother *that night*, and he would beat Stewart to Harrisburg, &c.

On the trial points were proposed on part of the defendants. The first was: If the jury believe that David Stewart, at the

time he took out his warrant, believed that the land embraced within the same, was not within the Bracken improvement, that on discovering the contrary, he was not precluded from relying on the settlement of Bracken. 2. That if McKiernan, knowing that Stewart had an application previously prepared, had his own prepared, enjoining secrecy, so that Stewart might not know it, and in addition made undue haste to forward his papers, and by such means acquired priority, his conduct was unfair and fraudulent, and gave him no title as against Stewart or those claiming under him. 3. That the pendency of the action of ejectment, which was brought in due time, was a bar to this action of trespass, for the reason that if the plaintiff recovered in the ejectment and brought an action for mesne profits, the recovery in the present case would not be a bar to that action. 4. That if Stewart, and King, and Shoenberger, took possession of the land in dispute, claiming it as their own (the plaintiff not being in actual possession), built a house upon it, put a tenant in it, who, and his successor, as their tenants, continued to occupy the land till after the commission of the trespass complained of in this suit, the plaintiff cannot maintain the action though the possession may not have been accompanied with the requisites necessary to make an actual settlement.

BURRELL, President Judge, in his charge, in reply to the 4th point, *inter alia*, expressed the opinion that the possession on part of Stewart, alleged as commencing in August, 1844, was a scrambling possession, not unbroken; and that such possession, or that of those following, if for the mere temporary purpose of digging ore on this or other land, was not such an actual possession as to oust the constructive possession of the true owner of the tract.

As to the 2d point, he charged that McKiernan having applied first and obtained a warrant, had priority over Stewart, unless it was shown that he had practised a fraud or deception on Stewart, by which Stewart was misled, delayed, or thrown off his guard, so that McKiernan got the advantage in point of time. But he expressed the opinion that McKiernan's conduct in telling the witnesses to say nothing of his application, and his haste to forward his papers, amounted to no such fraud or deception on Stewart. And if any such fraud had existed, *Baker* seemed to occupy the position of a purchaser without notice, and should not be affected by it.

He further said, that as to the portion of the land included in the plaintiff's survey, and which is covered by Stewart's survey, but *not* included in the designation of boundary by Bracken, the plaintiff seemed to have the better title. That there is a portion of the land covered by both surveys, and also included in Bracken's designation of boundary. As to this, the plaintiff contends that

[Shoenberger v. Baker.]

Stewart, by having included this portion in the survey under his warrant, lost the benefit of his prior title under the Bracken improvement; and this we think is the result.

The 3d point was answered in the negative. He observed that the plaintiff in this action of trespass was the defendant *in the ejectment*, and that if he succeeds in the ejectment he cannot follow it by an action for mesne profits, having been in possession himself. That such action can be brought only by a plaintiff in ejectment who recovers.

September 30, 1852, verdict for plaintiff for $350.75.

It was assigned for error, 2. In refusing to permit the defendants to show that they and those under whom they claimed, entered on the land in question before the survey on the McKiernan warrant; that the land was incapable of use except for taking ore and timber; that their occupancy continued from the building of the house on 5th August, 1844, till the commencement of this suit, &c. 3. In charging in answer to the first point, to the effect, that a settler, after designating his boundaries, may take out a warrant without reference to his settlement, and include in his survey a part of the unimproved land included in his designation of boundary as a settler; but that if he does so, he abandons his settlement right as to the part included in the survey. 4. In the answer to the 2d point, as to the effect of the knowledge and conduct of McKiernan. 5. In answering the 3d point in the negative. 6. In the answer to the 4th point, as to the original possession by the tenant of Stewart in August, 1844, and as to the possession of others following him.

*Banks*, for plaintiff in error.—It was, *inter alia*, contended that the defendants were in the actual possession of the land, and that Baker, the plaintiff, not being in possession could not maintain trespass. *Residence* is not necessary to constitute adverse possession: 3 *Ser. & R.* 291; 1 *Ch. Pl.* 175; 1 *Barr* 238–40; 2 *Id.* 291; 4 *Yeates* 218; 1 *Johnst.* 511; 3 *Ser. & R.* 509, 513; 10 *Id.* 114.

As to the 4th assignment, it was contended that McKiernan, having knowledge that Stewart had had his application prepared, was guilty of fraudulent conduct in having an application subsequently made, enjoining secrecy as to it, and by unusual haste in forwarding it. Also that the ejectment by Stewart, instituted on 3d April, 1846, served on McKiernan on 29th August, 1846, was *notice* to Baker, who purchased during the pendency of the action, his deed being dated 5th December, 1846 : 1 *Yeates* 547; 2 *Pa. Rep.* 449.

It was said that the evidence as to McKiernan's knowledge was

[Shoenberger v. Baker.]

different on this trial from that stated on the former one, reported in 6 *Harris*. It was said that on the first trial it appeared that McKiernan came to the knowledge of the preparation of the application by Stewart when he was *at the justice's office* to have his own prepared; but that on this trial it appeared that he knew *before he started for the justice's office* that Stewart had had his application prepared, and that he enjoined secrecy in order to prevent Stewart from obtaining a knowledge of his application, &c. It was further said, that CHAMBERS, J., (6 *Harris* 143,) repudiated any design to impugn the decision in Mix *v.* Smith, 7 *Barr* 75, where it was said by GIBSON, C. J., that the origin of the written title was the certificate of the justices. It was contended that that case and the decision on the present case, in 6 *Harris*, were irreconcileable. Reference was made to 8 *Ser. & R.* 181; and to 1 *Harris* 469, as to notice.

*Stewart*, for defendant in error.—It was contended that the land in dispute being uncultivated, the plaintiff's warrant gave him a constructive possession such as to maintain trespass. That the warrant being descriptive, gave title from its date. That the occupancy at intervals by different persons, in making roads and digging ore, was not such an adverse holding as ousted the constructive possession of the plaintiff. That as a portion of the land was covered by both surveys, and also included in the Bracken designation of boundary, Stewart, by including this latter portion in his survey under his warrant, lost the benefit of his prior title under the Bracken settlement, and must rest on his application and warrant, which, being later than that of the plaintiff, must give way to it. That McKiernan's injunction of secrecy, and his haste in forwarding his application to the land office, did not amount to such deception or fraud as to postpone his right. But even if there was *fraud*, that Baker, being a *bonâ fide* purchaser under deed made after the decision of the board of property, without any notice of claim *under the warrant of Stewart*, or in the writings to obtain it, was not affected by it.

It was contended that constructive possession is sufficient to maintain trespass: 6 *W. & Ser.* 323; 3 *Ser. & R.* 513. A settlement for *temporary* purposes does not give an improvement right: 2 *Barr* 55.

In answer to the 4th assignment he referred to the decision in this case, in 6 *Harris* 142, as to the priority of the applications. It was contended that the decision in Mix *v.* Smith, 7 *Barr* 75, did not conflict with it. That the case of Mix *v.* Smith was a conflict between a warrant holder and a subsequent *improver;* this is a conflict between *two warrant holders.*

As to the 5th assignment, it was alleged that the action for

[Shoenberger *v.* Baker.]

mesne profits can be sustained only after recovery in ejectment, where the possession has been wrongfully withheld from the party recovering.

The opinion of the Court was delivered by

BLACK, C. J.—This case has some points of more than usual interest, which are presented in the charge of the Court below with great clearness and precision. But after considering it with much care, we have all reached the conclusion that we must reverse the judgment for a reason apparently not much thought of on the trial, and which, as it puts an end to the action, makes any reference to the other questions unnecessary.

The suit is trespass for digging ore on land to which both parties claim title. The plaintiff is the owner of a warrant to William D. McKiernan, dated the 6th of August, 1844. David Stewart, who has since conveyed to the defendants, took out a warrant one day later. Their applications are dated both on the same day (namely, September 3), but Stewart's was in the morning, and McKiernan's in the evening, after he knew of Stewart's. The somewhat doubtful question which arose on these facts—I call it doubtful, because there are decisions upon it by this Court which seem to conflict with one another—came up before the board of property on a *caveat*, and was there decided (March 6, 1846) in favor of McKiernan. Within six months afterwards ejectment was brought by the losing party, agreeably to section 11 of the act of 3d April, 1792, which is still pending.

We hold the opinion which the Court of Common Pleas did not, that the right of either party to maintain trespass against the other for an injury done to the land in dispute, is suspended until the title shall be finally settled in the ejectment. We do not mean to say that one in actual possession may not bring trespass for an interference with any of those rights which the law gives to every peaceable occupant. But in this case the plaintiff recovered by virtue of his title alone, and the constructive possession supposed to result from it; and that, too, in the face of some evidence (we do not say enough) to show that his adversary had the possession.

The statute makes the determination of the board of property conclusive upon all parties to the *caveat* who are *sui juris* and not beyond sea, unless ejectment be brought within six months. It gives the action by way of appeal from that decision, and when judgment is pronounced by the Court, the patent which issues thereupon is a full and perfect title to him who gets it. But in the mean time, no patent can issue to either, because, until the suit is ended, one has as good a right as the other. Who shall have the patent, is a question which can be tried in no other way than that designated by law. The judgment will be conclusive when it

[Shoenberger *v.* Baker.]

is rendered, but we have no authority now, in a different action, to anticipate what it will be by considering what it ought to be.

When a statutory remedy is given, it must be strictly pursued, and all common law proceedings to the same end cease to be available. If the plaintiff succeeds in getting a patent under the law which authorizes the ejectment, his wrongs can then be fully redressed. His title will not only be full, perfect, and indisputable, but it will relate back to the period of its inception, and give him all the rights which he would have had under it if no *caveat* had been entered. In the mean time, the writ of estrepement, or a bill in equity, will prevent any irreparable waste. The act covers the plaintiff's case; it serves his whole purpose, and gives him all he can ask without grasping in advance at the fruits of a title which he has not yet got, and which we cannot be sure that he ever will get.

On the other hand, suppose, what is possible enough, that the plaintiff, after recovering in the trespass, should lose in the ejectment; he would then have in his pocket the amount of this judgment, with conclusive evidence on the record that it does not, and never did belong to him; and while the law would acknowledge the error of giving him damages for a trespass which was never committed, it would be powerless to make him refund, since it furnishes no remedy for a wrong perpetrated in pursuance of its own process, or in accordance with its own decrees. The absurd inconsistency of holding that one who is the absolute owner of land shall pay damages for using it, to another whose claim is utterly void, would scandalize the administration of justice.

The ejectment is to be determined without reference to anything except the opposing title. The scales are so adjusted as to contain nothing on either side of them but the legal rights of the parties under their respective applications, warrants and surveys; and care has been taken to blow away even the dust of the balance. The party who has the decision of the board in his favor is fictitiously deemed to be in possession, but it is provided in the act that "such supposed possession shall nevertheless have no effect upon the title." The object is to get a decision precisely such as the board ought to have given upon a view of the papers in the land office, and such facts *in pais* as may legally modify the effect of the recorded documents. But in an action of trespass the result may often depend on mere accidental circumstances. Possession, for instance, of one or the other party may be a fact so controlling, that the question of title would be left wholly out of sight. This case, indeed, came very near being one of that kind. If the actual occupancy of the defendants had been a little better made out, they would have taken the verdict on that ground alone. If this had happened, could the plaintiff, in case he should get the

[Shoenberger *v.* Baker.]

patent afterwards, recover for the same trespass in another action upon any principle except that the first action would not lie? I ask this question not to answer it (for that would carry us beyond the record), but merely to suggest a difficulty which may as well be avoided. At any rate, here was a trial of the title in a way not authorized by the statute, in which the parties were exposed to the danger of a decision on grounds different from those on which it might be finally settled.

If the board of property had authority to decide upon the title finally or with an appeal directly to this Court, the impolicy of permitting a different Court to adjudicate the same question in another form of action would be very apparent. In principle the case is made no way different by the fact, that the appeal from the board is to the Common Pleas. A tribunal to which an act of Assembly gives appellate jurisdiction has no more right to take original cognisance of the same subject while the appeal is pending, than it would have if the right to hear the appeal had been given to another.

We therefore decide that from the time the *caveat* is entered, until the right to the patent is finally determined, neither party (supposing him not in possession) has such a title as will sustain trespass against the other. An action brought afterwards by the patentee will lie for all injuries committed pending the dispute, and this, together with the writ of estrepement, is a sufficient protection to him who is finally adjudged to be in the right. It would not be proper now, to say what remedies may be had against strangers. It is. enough to add, that no rule here laid down applies to actions by or against persons not parties to the *caveat*.

Although it be not necessary for the purposes of this case to advert to any other of the points ruled below, yet as the others are fairly before us, and were carefully and well argued, we have concluded, for the purpose of saving future trouble, to express our conviction that there is no error in what the Court said about the warrants. The earlier warrant is the better title. We cannot recede from the rule which this Court established when the case was here before. It is the settled policy of the law, to make land titles depend as much as possible on written evidence. When two warrants are taken out on the same day, the record will show which is the elder one. But the priority of applications which bear even date, can only be determined by parol, and then, according to the doctrine of the plaintiff in error, the right is not settled without showing that the later applicant knew what had been done by the other. In a title twenty years old, what chance would there be of proving the truth concerning such facts as these? Great uncertainty would be the necessary consequence. And *cui bono?* Merely to restore to a slow man the advantage

which another has achieved by swifter motion. Of course I am speaking of cases in which there is no fraud. A party does no wrong who desires vacant land and tries to get it, though he may know that·another is moving under the same impulse. It is no imputation on the fairness of the race that the winner was behind at the start.

Judgment reversed and <em>venire de novo</em> awarded.

LEWIS, J., dissented from so much of the opinion as passed upon the titles of the parties. His reasons have been filed.