# Zeller, Appellant, *v.* American International Corporation et al.

*Land law—Public lands—Board of Property—Jurisdiction—Discretion—Records.*

1. The Board of Property is not a judicial tribunal, and its findings are not binding upon the courts.

2. Its duties involve some discretion. It may assist incomplete titles by correcting errors, and the like, and its records are helpful in showing a vigilant pursuit of a claim in prosecution of a right.

3. Its jurisdiction is primarily restricted to imperfect titles from the Commonwealth, but, once a patent issues, disputes over the patent must find settlement in the courts.

*Ejectment — Public lands — Application for patent — Delay — Abandonment—Right of entry—Act of January 27, 1806.*

4. The mere filing of an application in the land office of the Commonwealth for a warrant to survey an alleged vacant and unappropriated island, under the Act of January 27, 1806, section 1, 4 Sm. L. 268, and the securing of a report from the secretary of internal affairs declaring the land vacant and ordering a warrant and survey to issue, does not give the applicant for the patent a right of entry sufficient to predicate an action of ejectment against one in possession of the land.

5. Even if the application for a warrant, report thereon and order for survey gave the applicant a right of entry and incipient title necessary for a common law action, the state would have the right to consider the application abandoned, where the order to survey, with the report, was not procured until eight years after the application was filed.

*Ejectment—Plaintiff's title—Neglect of public officers to issue patent.*

6. In an action of ejectment the plaintiff is not in a position to strengthen his title by showing neglect of duty or violation of law by the officers of the land office in denying him a warrant for the land in question. He must depend on the strength of his own title not on the weakness of his adversary's.

*Ejectment—Appeal from decision of Board of Property—Act of April 3, 1792.*

7. The purpose of the Act of April 3, 1792, section 11, 3 Sm. L. 70, authorizing a suit at common law by a party aggrieved by a decision of the Board of Property is to try disputed rights between the parties arising from settlements, locations, conflicting warrants, surveys and the like.

Argued April 27, 1921.  Appeals, Nos. 311 and 312, Jan. T., 1921, by plaintiff, from orders of C. P. Delaware Co., Nos. 601 and 602, Dec. T., 1919, making absolute rules for judgment in favor of defendants on the pleadings, in the cases of Frank M. Zeller v. American Inter-

national Corporation, defendant, and United States Shipping Board Emergency Fleet Corporation, intervening defendant, and Frank M. Zeller v. American International Corporation, American International Shipbuilding Corporation, and United States Shipping Board Emergency Fleet Corporation, defendants. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART and SADLER, JJ. Affirmed.

Ejectment to recover possession of 14 acres of land recited as New Providence Island, in the Delaware River, in Tinicum Township, Delaware County, Pennsylvania.

Rules for judgment in favor of defendants on the pleadings. Before JOHNSON, P. J.

The court made the rules absolute. Plaintiff appealed.

*Errors assigned* were above orders, quoting them.

*Louis B. Runk,* with him *W. Roger Fronefield, James Wilson Bayard, Ralph J. Baker, Clarence W. De Knight* and *Nicholas H. Larzelere,* for appellant.—Ejectment is the proper remedy. The plaintiff has not been guilty of any laches for which he is responsible: Hunter v. Howard, 10 S. & R. 243; Elliot's Lessee v. Bonnet, 3 Yeates 287; Star v. Bradford, 2 P. & W. 384.

*T. R. White,* with him *Hannum, Chadwick & Weeks, Henry J. Gibbons, William Y. C. Anderson* and *Charles D. McAvoy,* for appellee.—Plaintiff must show title in himself: Bond v. Fitzrandolph, 2 Yeates 227; Stockman v. Blair, 5 Bin. 211.

The averments in plaintiff's declarations show no title in him: Caines v. Grant, 5 Bin. 119; Lauman v. Thomas, 4 Bin. 51; Star v. Bradford, 2 P. & W. 384.

OPINION BY MR. JUSTICE KEPHART, July 1, 1921:

Plaintiff brought two actions in ejectment against the defendants to recover an island in the Delaware River,

the same questions arising in each.   On motion judgments were entered for defendants on the pleadings.   Application for patent was made by plaintiff April 12, 1909, but, because two of the governors in office would not sign orders appointing appraisers for islands found vacant by the land office, the proceedings were delayed until 1917, when a report of vacant land and an order for warrant and survey was made by the secretary of internal affairs.   A caveat was filed against the secretary's action by defendants who had taken possession of the same land and made a similar application for patent, asserting the land was not an island but a part of adjoining land already owned by them.   Plaintiff filed a caveat against this application.   After hearing both contests, the Board of Property held that no such island existed as described in plaintiff's application filed in 1909, denied his right to warrant and survey and directed a patent be granted defendant, the American International Corporation. From the ruling of the Board of Property, a common law action, sometimes called an "appeal," was taken in both matters through ejectment suits, under the Act of April 3, 1792, section 11, 3 Sm. L. 70.   The section reads: "When any caveat is determined by the Board of Property in manner heretofore used in this Commonwealth, the patent shall nevertheless be stayed for the term of six months, within which time the party against whom the determination of the board is, may enter his suit at common law, but not afterwards; and the party in whose favor the determination of the board is, shall be deemed and taken to be in possession to all the intents and purposes of trying the title, although the other party shall be in actual possession, which supposed possession shall nevertheless have no effect upon the title."

It is conceded ejectment is the proper remedy to determine at common law whatever rights existed prior to the controversy before the Board of Property, relative to the property in dispute.   Appellant does not claim through possession, settlement, improvement, warrant,

survey, appraisement, payment, title or color of title, but asserts the right of possession is in him through the application made in 1909 and report of the secretary of internal affairs declaring the land vacant and ordering a warrant and survey; this he urges gave him a right of entry, sufficient on which to predicate an action of ejectment.

The question is novel in many aspects, but, following controlling principles laid down in early cases, we find no difficulty in reaching a conclusion. The decision depends upon the authority of the Board of Property and the rights, if any, obtained through an application order for warrant and survey, though the latter was never issued. The Board of Property is not a judicial tribunal in any sense: Blair v. McKee, 6 S. & R. 193, 205; Dunning's Lessee v. Caruthers, 4 Yeates 13, 18; Sergeant's View of Land Law, 172. Its proceedings were irregular, and, though it was attempted in colonial days to make it an office of record, the proprietaries objected, considering the subject within their control. It proceeds without a jury and without much regard to form; its powers cannot be increased by construction, and, while the decisions of the Board of Property are receivable in evidence, it has no discretionary powers: Blair v. McKee, supra, 202. This positive statement must be modified, however, as its duties involve some discretion: Jones on Land Office Titles, 18. Its findings, if the defeated party has instituted his common law action within the time prescribed, are not binding on the courts; nothing can be done by it that will affect the right of any person or alter the nature of his title as it otherwise existed. It might assist incomplete titles by correcting errors and the like, and its records are helpful in showing a vigilant pursuit of a claim in prosecution of a right: Sergeant's Land Law, 174, 175. Its jurisdiction is primarily restricted to imperfect titles from the Commonwealth, but, once a patent issues, disputes over it must find settlement in the courts: Fisher v. Kaufman, 170 Pa. 444, 488.

What title, then, did plaintiff have of which he was unjustly deprived by the board? He claims a right of entry, which is a right of possession, and, if his pleadings give rise to this right, it is sufficient, against all but the Commonwealth, on which to base title in an action of ejectment, though but an equitable one.

Early in our history, when a person desired to acquire unseated lands, his proper course was to make application to the land office for that purpose, specifying with more or less particularity the lands he desired to have. The application was judicially defined as a request in writing to have certain quantities of land. This method was introduced in 1716, and was called the application system; but titles by such system ceased in 1769 and applications for warrants, or other proceedings relative to unseated land, were afterwards used. Jones on Land Office Titles, page 25, section 24, describes five different sorts of land office titles, in all of which the application is joined with warrant, survey, survey without warrant, settlement, improvements, or with the Purchase Act of 1768. The mere formal application for vacant land then conferred no right on the applicant. A precisely descriptive application, or warrant, that is, describing the land with sufficient certainty, gave an inchoate title from the date of application, provided due diligence was used in obtaining a survey and having it returned. If the application be descriptive, the mere fact of filing it and taking out a warrant for a survey, without more, gave no title. There must be an official survey and return: Huston on Land Titles, 425, 458; Chambers v. Mifflin, 1 P. & W. 74, 79; Addleman v. Masterson, 1 P. & W. 454, 458; Emery v. Spencer, 23 Pa. 271, 275. "The pretensions of a plaintiff suing for his supposed right in a court of justice should be known and certain. Considered as a part of a new system for granting vacant lands, there is the same reason for requiring an official survey on the improvement of a settler, as that upon a warrant. No ejectment would lie by the

limitation act, unless a survey had been made thereon, and with the same implied exceptions": Stockman v. Blair, 5 Binney 211, 214. Before a right could be obtained by settlement, it was necessary to have "an actual personal resident settlement, with manifest intention of making it a place of abode, and the means of supporting a family, and continued from time to time, unless interrupted by the enemy, or by going into the military service of this country during the war": Act of December 30, 1786, section 3, 2 Sm. L. 395; Smith's Lessee v. Brown, 1 Yeates 512, 516; Huston on Land Titles, 131.

Here the title is claimed by the mere filing of a paper. The application, report and order to survey does not give plaintiff a right of entry, nor the incipient title necessary to a common law action. These acts are not sufficient to germinate a title. Even if they were, the State would have the right to consider the application abandoned where the order to survey, with the report, was not procured until 1917, eight years after the application was filed. The acts of the governors did not stay the hand of the secretary of internal affairs, nor would they militate against the State's right. It may be mentioned one governor was in office, during part of this time, against whom no complaint is made.

It is charged the officers had no authority to deny a warrant. The Act of January 27, 1806, 4 Sm. L. 268, reads, the land office shall issue the warrant, and if the law had been complied with an undoubted legal standing would be presented. But in what sense does this claim alter the nature of his title, as it otherwise existed before the court or board,—a title, imperfect or otherwise, he never possessed? To give support to plaintiff's idea of title, the court must assume, through the failure of the board to act, that a warrant, survey, return, acceptance and appraisement had been lawfully made. How can a common pleas court, in an action of ejectment, bring to account officers who refuse to perform such

ministerial duties?   Ejectment is surely not the proper remedy.

We are of opinion no right of entry vested in plaintiff through the application report and unfinished order; neither forms any contract on which the party could be sued by the State until a survey has been made, designating the land to be taken by metes and bounds: Blaine v. Crawford, 1 Yeates, 287, 289; Star v. Bradford, 2 P. & W. 384, 395; Chambers v. Mifflin, supra; Jones on Land Office Titles, 51; Sergeant's Land Laws, 135, and Judge Huston on Land Titles in Pennsylvania, 424. Plaintiff had no common law right he could try out; he must, in ejectment, depend on the strength of his own title, not on the weakness of his adversary's: Burford v. McCue, 53 Pa. 427, 432.   The purpose of the Act of 1792 was to try disputed rights between the parties, arising from settlements, locations, conflicting warrants, surveys and the like.

The judgment of the court below is affirmed.