## ZELLER v. AMERICAN INTERNATIONAL CORPORATION.

(District Court, E. D. Pennsylvania. August 3, 1921.)

No. 8064.

Public lands ⊙⟿167—Statutory action to determine right to land patent ejectment in form, but not in substance.

An action brought under Act Pa. April 3, 1792, § 11, 3 Smith's Laws, p. 70, providing for an action to determine priority of right to a patent for "unknown" state lands, which, properly brought in the form of an action in ejectment, differs from ejectment in that plaintiff is not required to allege or prove title in himself.

At Law. Action by Frank M. Zeller against the American International Corporation. On rule by defendant for judgment on the pleadings and motion by plaintiff to remand to state court. Rule for judgment discharged, and motion passed.

James Wilson Bayard, of Philadelphia, Pa., W. Roger Fronefield, of Media, Pa., Louis B. Runk, of Philadelphia, Pa., Ralph J. Baker, of Harrisburg, Pa., Clarence W. De Knight, of Washington, D. C., and Nicholas H. Larzelere, of Norristown, Pa., for plaintiff.

Charles D. McAvoy, U. S. Atty., of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The rule is by defendant; the motion by plaintiff. The facts are clear enough, but there seems to be such a difference in the statement of them that we give our version with some feeling of diffidence. If we have the wrong concept, either party may move for a reargument.

1. The rule for judgment is based upon the record situation that the plaintiff has brought his action in ejectment for lands in the possession of the defendant and claimed by it to be its property, and that the statement of claim shows no right of possession, much less right of ownership to be in the plaintiff.

It is idle to discuss the legal merits of the question as thus presented, because the very capable counsel for plaintiff frankly admits that, if such is the question before us, it admits of but one answer. The real question, therefore, is not the merits of the question suggested by this presentation, but what the question to be decided is.

The plaintiff presents a wholly different question. It will appear out of an outline fact statement. Parties known to this record as Black and Bohlen owned an island in the Delaware river, which has since become known to the whole world as Hog Island. Adjacent to it, or part of it (as the fact may be), is a tract of land to which the plaintiff, or some one, has given the name of "New Providence island." The Blacks and Bohlens sold and agreed to convey all the lands referred to by "a good and marketable title" to the defendant. The defendant was willing to accept title to the part which we have called "Hog Island" (to distinguish it from the part which we have called "New Providence Island"), but raised the question of whether the grantors had the title called for by the contract to the other part of the land to be conveyed. An amicable action was brought, really with the objective of clearing up the title. In this action the grantors asserted title, basing it upon the averment that the lands (the title to which was in dispute) were accretions to the lands to which they admittedly had title. The defendant set up title to the lands in dispute to be in the commonwealth. This was based, because it must have been so based, upon the fact that the New Providence lands were not mere gradual accretions to the Hog Island lands, but a separate and independent island formation, which had arisen out of that part of the bed of the river which had been abandoned by the United States as part of our navigable waters. No question is raised of the disputed lands being within the territorial limits of Pennsylvania, and this will, in this discussion, be assumed to be the fact.

The court disposed of the case before it by the ruling that, whether the vendors had or had not title, they had not a title so far marketable as that the vendees were obliged to accept it under the agreement of purchase.

The plaintiff, in the meantime, had sought to avail himself of the provisions of an act of assembly which gives the right to the discoverer of before unknown island lands to apply for a patent therefor. The state officials denied him a patent and his right to any of the claims he presented. The defendant then made a similar application. Caveats were filed by each of the parties against the other. What is known as the "board of property," acting for the state, decided in favor of the application of defendant and directed a patent to issue to it. The present plaintiff then brought the action, in the instant case, under the provisions of the act of assembly. It is in the form, and admittedly properly so, of a common-law ejectment, and subject, we assume, to the regulations of the Practice Acts. Previously, however, the plaintiff had instituted common-law actions in ejectment independently of the action authorized by the act of assembly, to which reference has several times been made. These actions were decided against the plaintiff by the trial court (court of common pleas of Delaware county), and the judgments affirmed by the Supreme Court of the state on appeal, 114 Atl. 778. The gist of the ruling was that under the law of Pennsylvania ejectment determined directly, not the title to lands, but the right of possession, although indirectly and consequentially it did, of course, settle the title; that in such actions the plaintiff must recover, if at all, on the

strength, as the expression is, of his own title, not the weakness of the title of the one in possession, or indeed the absence of any show of title; and that the plaintiff had not averred any title to be in him. Influenced thereto by some expressions in the opinion accompanying the ruling of the Supreme Court, the plaintiff in the present action has, since it was brought, applied to the court of common pleas of Dauphin county for a writ of mandamus, directed to the proper state officials, requiring them to take the action favorable to the plaintiff, which he claims under the state law to be his right.

This recital of the fact situation makes clear why counsel for plaintiff admits that, if the present action be, as counsel for defendant views it, common-law ejectment, the plaintiff is out of court, and the defendant to have the right to judgment.

Counsel for defendant is wholly wrong in his view of what the true nature of the action is. It is, it is true, in form ejectment, because the act of assembly directs that this shall be its form. Its real nature nevertheless is the equivalent of a feigned issue to determine to whom a patent should issue, the question having first been made a judicial question, and the mode of determining it determined by the Act of Assembly. The decision of the issue raised determines the whole controversy, a determination in the way of which there are otherwise technical obstacles.

We will enter into the discussion by first taking a more or less a priori view of the subject of inquiry, and finding to what this view leads, and then subjecting the soundness of the conclusions reached to the test of the statutory enactments and the adjudged cases. At the risk of stating merely the clearly obvious, we begin with the double observation that the title to all lands commonly designated as unseated is in the commonwealth, and that no appropriate and adequate mode of settling controversies between rival private disputants over the title to lands, the legal title to which is in the commonwealth, is afforded by the laws of Pennsylvania. Because of this latter fact it has always been deemed necessary in ordinary actions in ejectment to show title out of the commonwealth before showing title by descent or occupation under a claim of ownership. Neither of the parties to this controversy can show a paper title beginning with a grant from the state or antedating its title. Indeed, if the plaintiff be right, neither of them has any paper title whatever, or had when the controversy arose.

The second observation made is that it was necessary, or at least desirable, for the state to establish a system to avoid or regulate disputes which would otherwise arise over the possession of what we will call, for want of a better expression, newly created lands. A claim of more or less merit might belong to one who had discovered, occupied, and improved such lands. Whatever weight such a claim to consideration might have as against the state, it would have acknowledged merit against another claimant who had done nothing except to discover the weakness or want of title in the occupier of lands and who sought to profit by his discovery through securing title from the state and by means of this ousting a prior occupant. At the same time the interests of the state demanded that a reward be held out to those who were the

first to disclose to the state the fact that there were lands belonging to it, which, if neglected, might be occupied by some one, and the otherwise just claim of title by the state be imperilled or at least embarrassed. It was well, therefore, to follow the policy adopted in escheats and qui tam actions.

This situation prompted the passage of the act of 1792. Its purpose and legal intendment is that the discoverer of lands, which have no other owner than the state, who first brings the existence of the land to the notice of the state, shall be rewarded by a patent on application, etc. This was a wise and just thing to do. It was recognized, however, that the right to thus apply for a patent was a privilege open to abuse. The hearing thereon must often be ex parte, and be conducted in the absence of others who had good claim of right to be heard. The difficulty thus presented was solved by the grant of a patent to the first applicant, and then subjecting the justice of his claim to judicial investigation, the event of which determined the right. There was accordingly given the right to institute an action for this purpose, and in order not to put the person, who was in possession under a claim of ownership, to any disadvantage, he was admitted to the right to institute an action without the necessity of surrendering his possession, the formality of which was necessary, if he brought common-law ejectment. All which remained was to provide the required machinery in the form of an appropriate action. The closest analogue at hand was common-law ejectment, modified in the feature noted. That there would have been propriety in the occasion for such a law, and in having it take this form would, we assume, be admitted. The only inquiry left is: Was such a law passed? The plaintiff asserts it was; the defendant asserts that the only remedy given is the writ of ejectment known to the common law of Pennsylvania.

The answer to the question raised must be found in the statute itself. There have been a number of such statutes, some general and some relating to islands in the named rivers of the commonwealth. The industry of counsel has resulted in the agreement that the question now presented is to be determined by Act April 3, 1792, § 11 (3 Smith's Laws 70). This, as we read it, provides that, "when any caveat is determined by the board of property," a patent shall be withheld for six months, "within which time the party against whom the determination of the board is may enter his suit at common law, but not afterwards; and the party in whose favor the determination of the board is shall be deemed and taken to be in possession" for the purpose of trial (however the actual possession may be), but such "supposed possession shall nevertheless have no effect upon the title," etc. If no suit is brought, the patent shall issue to the applicant; but, if suit is brought, the patent shall issue to the successful party, and in either event shall pass a good title, etc.

The meaning of this statute is so far beyond any need of the statute being construed that in construing it we have merely quoted it verbatim, paraphrasing its language only for brevity. The conclusion, in consequence, is clear that the plaintiff in the present action is not called

upon to show title upon which alone he could recover in a common-law ejectment, but merely his right to a patent as against the defendant. The real purpose of the enactment seems to us to be this: The state might, of course, convey whatever title it held to the grantee of its choice. The result of this might, however, be an injustice to the occupier, and give an unfair advantage to the grantee, who thereafter would recover, not on the merits of his claim of title as against the occupier, but wholly because of the inability of the occupier to assert any title as against the commonwealth or its grantee.

This opinion has already reached such a length that we will not extend it by any discussion of the cases to which we have been referred, but will content ourselves with the citation of the leading ones as evidence that we have had them in mind, and that none of them are in conflict with the conclusions reached. Act July 3, 1792 (3 Smith's Laws, 70); Zeller v. American Inter. Corp. (Pa.) 114 Atl. 778 (not yet [officially] reported); Blaine's Lessee v. Crawford, 1 Yeates (Pa.) 287; Bell's Lessee v. Levers, 3 Yeates (Pa.) 23; Ruggles v. Gaily, 2 Rawle (Pa.) 232; Rose v. Klinger, 8 Watts & S. (Pa.) 178; Carothers v. Dunning's Lessee, 3 Serg. & R. (Pa.) 373; Hunter v. Howard, 10 Serg. & R. (Pa.) 243; Shoenberger v. Baker, 22 Pa. 398; Wilson v. Altemus, 2 Watts & S. (Pa.) 255.

Independently of the conclusion indicated above, the position of the defendant being that the plaintiff can in no event recover without the showing of a patent to him, or evidence of a title good with title out of the commonwealth, and indeed (as we understand the position of counsel for defendant) that the plaintiff is concluded by the refusal of a patent to him, the logic of the case, as now presented, is that we should not, in any event, rule it against the plaintiff, but await the result of his efforts to compel the issuance of a patent to him.

The rule for judgment is discharged.

2. Respecting the motion to remand, we have been left in some doubt whether the plaintiff has withdrawn it, or is asking that the right of defendant to have the case here tried be determined. We accordingly do not dispose of the motion now, but give leave to the plaintiff to withdraw it, or to set the case down for reargument upon this motion.