### ZELLER v. AMERICAN INTERNATIONAL CORPORATION et al.

(Circuit Court of Appeals, Third Circuit. September 18, 1923. Rehearing Denied October 30, 1923.)

No. 2943.

1. **Navigable waters ⚖➙42(1)—Artificially formed "island" held not patentable by state under statute.**

Land formed in a navigable river by dumping and pumping mud in a part of the river abandoned for purposes of navigation, though entirely surrounded by water, is not an "island," within the meaning of Act Pa. Jan. 27, 1806 (Stewart's Purdon's Dig. p. 2234), authorizing the granting of patents to islands in the navigable waters of the state, but such statute applies only to islands formed by natural causes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Island.]

⚖➙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Navigable waters ⬦═42(1)—Land formed in a river by dumping mud against a government dyke is not an island.**

   Land formed in a river by dumping and pumping mud on the inside of a government dyke extending diagonally downstream, bounded on one side by water, but on the other by the dyke, *held* not an island.

**3. Appeal and error ⬦═1068(5)—Failure to give requested instruction harmless error, where evidence warranted instructed verdict.**

   Failure to give a requested instruction, though stating a correct proposition of law, is harmless error, where the evidence warranted a binding instruction in favor of the party for whom the verdict was rendered.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action at law by Frank M. Zeller against the American International Corporation and the United States Shipping Board Emergency Fleet Corporation. Judgment for defendants, and plaintiff brings error. Affirmed.

· See, also, 274 Fed. 815.

W. Roger Fronefield, of Media, Pa., James Wilson Bayard, of Philadelphia, Pa., Ralph J. Baker, of Harrisburg, Pa., Clarence W. De Knight, of Washington, D. C., and Louis Barcroft Runk, of Philadelphia, Pa. (Charles Hunsicker and Nicholas H. Larzelere, both of Philadelphia, Pa., of counsel), for plaintiff in error.

George W. Coles, U. S. Atty., Thomas Raeburn White, and Wm. Y. C. Anderson, all of Philadelphia, Pa., for defendants in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The subject-matter of this action is a tract of land, embraced within the area known as Hog Island, on which were built and now rest the shipways of the shipyard operated under that name by the United States Shipping Board Emergency Fleet Corporation. The question of fact in this action is whether the tract of land was, at one time, an island, and the question of law is, whether (according as that fact is determined) the plaintiff under one act of the Legislature of Pennsylvania, or the defendant under another act, is entitled to acquire the land from the Commonwealth by patent.

The Mifflin Bar is a natural obstruction in the Delaware River extending from the Pennsylvania shore eastwardly across the channel. Some time prior to 1885 the United States, in order to divert the flow of the stream and thereby deepen the channel, built a wooden bulkhead or revetment a short distance into the river at right angles to the shore and thence down stream for about three hundred feet. The bulkhead caught the silt in the flow of the tides and formed a bank as it was intended to do. But this proved inadequate. So, in 1885, the United States built a stone jetty or dyke, beginning at the outer end of the bulkhead and extending at low water mark about six thousand feet diagonally down the river, with a gap of four hundred feet in the middle, to deflect the current and deepen and keep open the channel across the Mifflin Bar. Naturally it became known as the Mifflin Bar Dyke. In 1895 the portion above the gapway was raised from low water mark to

about two feet above high water mark. Behind and against the dyke, land accumulated. It came from two sources; one from natural accretion and the other from mud dumped behind the dyke and pumped over the dyke until, in 1909, the tract had grown to about fourteen acres at a plane of four feet above common low water, exclusive of rocks and susceptible of cultivation, fulfilling (the plaintiff claims) all the requirements for patenting islands in the Susquehanna River which were laid down by the Act of April 2, 1822, Section 1, 7 Smith's Laws, 549, 2 Stewart's Purdon, 2234, and adopted by the Land Office of Pennsylvania as requirements for patenting islands generally in navigable rivers of the Commonwealth. Regarding the land as an island and himself as its discoverer, the plaintiff, on April 12, 1909 (acting under the Statute of January 27, 1806, 4 Smith's Laws, 268, 2 Stewart's Purdon, 2234), filed an application with the Commonwealth of Pennsylvania for the land as an unappropriated island. The Secretary of Internal Affairs found the land to be an island and directed, as a preliminary to a patent, the issuance of a warrant of survey. Delays both on the part of the plaintiff and the Commonwealth followed. When the war came, the American International Corporation by purchase acquired the land in controversy, the bottom land between it and the shore of Hog Island, and a part of Hog Island itself, and, filling in the low places, proceeded to build a shipyard. The land, if an island, thus became merged in what is now a tract on the mainland. There being in the Commonwealth color of title to the land in question, Black v. American International Corporation, 264 Pa. 260, 107 Atl. 737, the American International Corporation applied to the Commonwealth for a patent as land reclaimed from the bed of a navigable stream under the Pennsylvania Act of June 27, 1913, P. L. 665, 6 Purdon, 7322 (Pa. St. 1920, §§ 19037–19041). This act provides that the owner of abutting land may, in preference to all others, secure a patent for state lands which underlie waters abandoned for navigable use and which may be reclaimed by filling.

Thus there were two applicants for the same land; one for an "island" and the other for filled-in land in the nature of a peninsula. Cross caveats were filed to the opposing applications and the controversy reached the Board of Property of the Commonwealth of Pennsylvania for decision. That body decided that the land in question was not, and had never been, an island and that, in consequence, the application of the American International Corporation should be allowed. The plaintiff, acting under his interpretation of the Act of April 3, 1792, 3 Smith's Laws, 74, Section 11, 2 Stewart's Purdon, 2209 (which provides that when any caveat is determined by the Board of Property, the patent shall be stayed for a term within which the party, against whom the determination of the Board is, may enter his suit at common law), instituted two suits in the nature of actions of ejectment against the defendants in the Court of Common Pleas of Delaware County where the land lay. These suits were decided against him on the familiar ground that in ejectment a plaintiff must recover on the strength of his own title. In this instance the plaintiff, of course, had no title to the land he was seeking. Zeller v. American Interna-

tional Corporation, 271 Pa. 472, 114 Atl. 778. At most he had only a right of purchase. The plaintiff, however, had instituted a third suit in the same court against the American International Corporation, in which later the United States Shipping Board Emergency Fleet Corporation intervened. This was removed to the District Court of the United States for the Eastern District of Pennsylvania and is the suit at bar. By his pleadings in this suit, though praying "that the title to the said land be adjudged to be in him by reason of his prior application for the same as an unappropriated island," the plaintiff maintained that the action afforded by the Act of April 3, 1792, is not one to try title (for obviously he had none to try), nor is it one to "try disputed rights between parties, arising from settlements, locations, conflicting warrants, surveys and the like," as the Supreme Court of Pennsylvania had apparently decided in Zeller v. American International Corporation, 271 Pa. 472, 114 Atl. 778, but that the action is in effect an appeal from the Board of Property on its finding, in this instance, that the land in question is not an island. The defendants challenged this construction on the contention that the action which the Act gives the losing party before the Board of Property is not an appeal but is a remedy against other claimants in the nature of ejectment (though the moving party be in possession of the property) and does not confer upon him any right he did not have before. Whereupon they moved for a directed verdict. The learned trial judge was inclined against the defendants' contention and submitted the case to the jury. The plaintiff lost. Later he sued out this writ of error, assigning error mainly in the charge. As the defendants had a verdict they, of course, did not take a writ of error and, in consequence, are not in position to question the trial court's interpretation of the statute or to have the verdict sustained on the ground, they urge, that the plaintiff should not prevail on this writ because in any event the trial court erred in submitting the case under the statute.

The question of the interpretation of the Pennsylvania Act of April 3, 1792, is one primarily for the courts of Pennsylvania. A federal court will not interpret a state statute unless in the trial of a cause it is compelled to do so. Whatever may be the correct interpretation of the Pennsylvania Act of April 3, 1792, under which the suit was brought and of the Pennsylvania Act of January 27, 1806, under which the application was made, certain it is that these acts deal with islands in navigable streams, and the basic question to be determined under any interpretation of the acts is one of fact, namely, whether the land in dispute is an island. In reviewing the trial of this case, the first question therefore is whether on this issue, where the evidence was conflicting, the charge of the trial judge was right; and second, whether the evidence which was not in dispute sustains the verdict.

[1] Bearing on the first question there is much testimony not in dispute. It shows that after the dyke had been built the water between it and the Hog Island shore was abandoned for navigable purposes; that scows coming in from below, at the wide open end, dumped their cargoes of mud anywhere in the area; that mud in vast quantities was so deposited through a period of years until at low tide it showed

above the water; that thereafter mud was deposited by scows on the outer side of the dyke and pumped over the dyke by hydraulic dredges until the deposits showed at high tide; that to these artificial deposits silt was naturally added by tidal movements until, from all sources, land accumulated and extended against the dyke and in some places over and beyond it. Was land so formed an island? In submitting this question the learned trial judge instructed the jury that the Act of January 27, 1806 (under which the plaintiff's application for acquisition of the land was made), "relates only to islands formed by natural causes; it does not relate to an accumulation of land caused by dumping on the bottom of a navigable stream;" soil so dumped "is entirely surrounded by water and answers to a technical formal definition of an island. But would anybody with any common sense call it an island? It is very obvious that it is not an island within the meaning of the term as it is expressed here;" "an island is land in the real substantial sense formed by natural causes and the natural processes of accretion. Of course to be an island, in addition to being vacant land, it must be entirely surrounded by water;" "if you decide there is no island there in any real sense, then, I charge you, that your verdict should be in favor of the defendant. If that land was land that was really reclaimed by dumping and filling in the shallow water in an abandoned part of this river bed, then it belongs to the defendant in this case, and your verdict should be in favor of the defendant."

The plaintiff assigns these instructions as error, complaining that the learned trial judge mistakenly defined an island by its origin rather than by its nature. True, by all definitions, "an island (in a geographic sense) is a piece of land entirely surrounded by water." But it does not follow that every piece of land entirely surrounded by water is an island in the sense of the statute. For instance, the national government may build a lighthouse on an artificially deposited rock foundation in a navigable river. Land may, and naturally will, accumulate on and about such a structure, yet we doubt if anyone would contend that such land is an island within the meaning of the Act of January 27, 1806, or that the Commonwealth of Pennsylvania would, by virtue of that Act, convey the same to an individual by patent.

The nature of the land enters into what is contemplated by the statute when it speaks of islands, and the origin of the land inevitably has a bearing on its nature. If its origin was artificial and its nature or structure is still the same as its origin, as, for instance, if it was mud dumped by scows and pumped by dredges and is still the mud so deposited, it is not, we conceive, the kind of land which the statute describes as an island, though it may be wholly surrounded by water. A body of land thus artificially formed differs from islands formed by natural causes set in motion by artificial barriers, as, for instance, where accretions are formed by a current that has been changed by artificial means. Tatum v. St. Louis, 125 Mo. 647, 28 S. W. 1002; Whyte v. St. Louis, 153 Mo. 80, 54 S. W. 478; Jones v. Soulard, 24 How. 41, 16 L. Ed. 604; County of St. Clair v. Lovingston, 23 Wall. 46, 23 L. Ed. 59. We are of opinion, therefore, that the learned trial judge was right in his instruction as to the kind of land the statute contemplates

as an island, and as he left the jury free to find that the land in question fell within or was outside the definition, we discover no error.

The next question submitted was whether the land, even if formed by natural causes, was wholly surrounded by water in the sense of the geographic definition. On this issue the evidence was conflicting, some witnesses saying that at low tide water flowed through the bulkhead embankment deep enough to admit a rowboat and permit egress at the other end, while others said the bulkhead embankment was so far out of the water at low tide as to admit passage afoot to the dyke, thus making the land in question a peninsula instead of an island. This question was properly submitted and is now decided by the verdict of the jury.

[2] Aside from the issue whether the land was an island according as it was or was not formed by natural causes and from the issue whether water did or did not flow through the bulkhead embankment at low tide, thus leaving the land connected with or cut off from the mainland, we are at a loss to see how, in any case, the land falls within the ordinary, and the necessary, geographic definition of land entirely surrounded by water.

From testimony not in dispute it appears that before any island, natural or artificial, was thought of, the national government built the Mifflin Bar Dyke. This, as we have said, is a long narrow structure, wholly of stone. Mud was dumped and pumped behind the dyke and land formed immediately against it on the shoreward side. It assumed the shape of a cleft pear—tapering at the upper end, enlarged in the backwater below the middle, narrow at the lower end and flat along the straight side of the dyke except where for a short distance it passed over it. The dyke is not land, and, of course, it is in no sense a part of the land in question. Accepting for the moment the plaintiff's contention that water flowed through the bulkhead embankment at low tide, it appears that the tract of land was bounded on its irregular side by water and on its straight side by the Mifflin Bar Dyke. Obviously it was not "entirely surrounded by water."

Discussing the matter a step further, if the courses and distances appearing in the plaintiff's application for a patent to an island go to the westerly side of the dyke, then the land is partially bounded by the dyke and is therefore not wholly surrounded by water. If the courses and distances pass to the easterly side of the dyke and include it, they embrace property of the United States not subject to patent by the Commonwealth of Pennsylvania. If either body of land, the small tract easterly of the dyke or the large tract westerly, is claimed, or, indeed, if both tracts are claimed, then neither is wholly surrounded by water and the land is not an island.

[3] The remaining assignment of error concerns what must have been an inadvertent omission by the court to charge the plaintiff's point that, "In deciding upon disputed questions of fact you (the jury) must be governed by the weight of the evidence taken in connection with surrounding circumstances and probabilities." If error, it was not prejudicial and therefore is not reversible, Linn v. United States, 251 Fed. 476, 483, 163 C. C. A. 470; Kalmanson v. United States (C. C. A.) 287

Fed. 71, 72, because, on the undisputed evidence, the court would, in our opinion, have been justified in granting the defendant's motion for binding instructions.

The judgment below is affirmed.