WILLIAM WHITWORTH, Appellant, v. ELIAS BARNES et al.

**Division One, April 2, 1914.**

1. **PRACTICE:** Ejectment: Affirmative Defense: Burden. In ejectment, where defendant sets up title by limitations under a parol gift of the land from plaintiff, it being conceded he was the owner of the record title, the burden of proof rests upon defendant to establish the defense pleaded.

2. **EJECTMENT:** Death of Plaintiff After Appeal: Revivor. In ejectment for possession of land, prosecuted to judgment in favor of defendants, and appealed by plaintiff, upon his death after the appeal has been perfected the cause should be revived in the name of his heirs and cannot be revived in the name of his administratrix, and if revived in her name alone the appeal must be dismissed.

Appeal from Boone Circuit Court.—*Hon. David H. Harris,* Judge.

APPEAL DISMISSED.

*Sebastian & Sebastian* for appellant.

*Harris & Finley* for respondents.

WOODSON, P. J.—William Whitworth, deceased, instituted this suit—ejectment—in the circuit court of Boone county, against Elias Barnes, to recover forty acres of land described in the petition. Anna Eliza Barnes, the wife of the defendant and daughter of the plaintiff, filed a separate answer setting up the ten-year Statute of Limitations, under a parol gift of the land to her by her father, and therein prayed the court to try, ascertain and determine the rights, title and interest of the parties to the land in controversy.

The defendant Elias Barnes, by a separate answer, set up title in his wife under said parol gift and pleaded the ten-year Statute of Limitations.

The case was by agreement of parties tried before the court without the intervention of a jury, and after hearing the evidence—no instructions having been asked, given or refused—the court found the issues for the defendants and rendered judgment accordingly.

After all proper preliminary steps were taken the cause was duly appealed to this court; and since the appeal had been perfected the plaintiff died, and upon the suggestion of his death the cause was revived in the name of his widow, the administratrix of his estate.

Under the pleading, it being conceded that the plaintiff was owner of the record legal title to the land, the court held, and properly so, that the burden of proof rested upon the defendants, to establish the title and defense stated in the answers.

The evidence for the defendants was substantially as follows:

The defendant, Anna Eliza Barnes, testified that she was one of the defendants, the wife of Elias Barnes, the other defendant, and a daughter of the plaintiff, William Whitworth, deceased, and the step-daughter of the appellant, Carrie L. Whitworth, the administratrix of his estate. That in the year 1898 she and her husband were living on a farm belonging to one Andrew M. Mathis, some distance west of the town of Sturgeon, Boone county, Missouri.

At that time the forty acres in controversy was a part of her father's farm, on which he and her mother resided, which at that time had been rented by her father to one Beatty, for a period of five years, which had two years to run.

That the plaintiff stated to defendant, Anna, and others, that he had rented the land to Beatty in order to have it cleared and put in cultivation for her, but at the expiration of three years, he, desiring to have her near him and his wife, changed his mind and wanted defendants to have the land at that time. Mr. Beatty, however, had to be considered before defendants could secure possession of the place. With that purpose in view the plaintiff tried to get Beatty to give possession, and offered to furnish the money to defendants with which to buy him out, but they refused to pay any sum for the possession.

That while Beatty was willing to deliver possession and get rid of the lease, he was afraid that he might be liable thereunder for the rent during the two years, the unexpired term of the five-years' lease of the premises, and therefore refused to deliver possession unless the lease was formally transferred to defendant, Elias Barnes.

That this was done for the purpose only of securing the possession of the land and not for the purpose of making Barnes the tenant of plaintiff.

That after having settled those matters between the parties, the defendants, on December 24, 1898,

moved from their place near Sturgeon to the place in controversy, the plaintiff himself assisting them in moving.

' The defendant then introduced some eight or ten witnesses, whose testimony tended to prove the truthfulness of the allegations of the answer regarding the parol gift of the land by the plaintiff, William Whitworth, the father, to the defendant, Anna Eliza Barnes, and that in pursuance thereof she and her husband left their old home and moved upon the land in controversy. In substance they testified that he told her prior to and at the time they moved, that Anna could have the place; that he said to them when the question came up regarding the building of a house on the premises, that he had given her the land, but he would not build a house thereon for her; also that at the time the plaintiff refused to purchase some fruit trees an agent was trying to sell him for the place, he assigned as the reason that he had given the land to her, and that he would let her and her husband purchase the trees.

Pleasant Whitworth, the brother of the plaintiff, testified that the latter told him that he had given the place to his daughter and was going to make her a deed.

Also he stated to a number of persons that he had given the place to his said daughter, and that her mother, Mrs. Whitworth, in the presence of plaintiff, stated that he had given the place to Anna in order that she might be near them, and assist them in their declining years, to which he made no reply.

The evidence also tended to prove that with the knowledge and consent of the plaintiff, the defendants made valuable and lasting improvements upon the place, costing some two or three hundred dollars, besides clearing some eight or ten acres of ground, at the cost of five dollars per acre. That the improvements consisted of building an addition to the residence, a

chicken-house, building fences and various other matters of similar character.

That during the entire occupancy of the place, more than ten years prior to the institution of this suit, the defendants paid no rent for the place, notwithstanding the fact they were in the exclusive, open, notorious and continuous possession of the premises, residing upon, cultivating and receiving the products thereof.

That while the plaintiff paid all the taxes upon the place, and cut stove-wood therefrom for his own use, yet he paid the taxes because his daughter was hard up and he wanted to assist her, and cut the wood by permission of the defendants.

That some time after the parol gift of the land to the defendant Anna Eliza Barnes, her mother died, and the plaintiff, her father, married the appellant, Carrie L. Whitworth, the administratrix in whose name this cause was revived.

The plaintiff then introduced some three or four witnesses, who, according to the statement of counsel for appellant, testified as follows:

William Whitworth stated that he owned the forty acres of land described in the petition and that he had leased it to Mr. Beatty for five years; that Dr. Stover drew the papers and held them; that he did not remember when the lease was transferred to Barnes, but it was before the dry year 1901; that Barnes went there under the lease and that he never gave him any other possession in any way or fashion; that he never gave his daughter this land, if he had he would have made her a deed for it; that since Barnes and his wife had been there he had gone there whenever he pleased and cut and hauled off wood, and paid all the taxes; that the first time he ever knew that his daughter claimed the property or set up any title to it was about the first of August, 1910; his daughter wanted him to furnish the money to build another room to the house,

but he hold her there were more rooms there now than he needed, and they then put up a small box-room worth about fifteen dollars; the land was to be cleared under the Beatty lease; that he built the fence; the rental value of the place is about fifty dollars a year or about five dollars a month; his daughter has never paid any rent.

Cross-examination:

"My daughter moved to the place about 1900, as well as I remember, and has lived on it ever since and has not paid any rent; I never asked her for any; I do not remember having a conversation with Mr. Mathis about the place or with Mr. Goldberry about some trees; I helped to move my daughter to the place; I do not remember having a conversation with Mr. Rowland or his wife, nor with my brother, Pleasant Whitworth, about this land."

J. H. Stover stated that he had been a justice of the peace for a number of years; that he wrote a lease from William Whitworth to Mr. Beatty, and that it was left with him to keep; it was written about twelve years ago; "after it had been written some time Mr. Barnes and Beatty came to my house and I wrote a transfer of the lease from Beatty to Barnes; I looked for the lease but could not find it; it was for five years and on the land in controversy; the transfer was made about a year before the dry year, about 1900, I think."

Cross-examination: "I am not positive about the time; it was some time after the lease was written."

J. F. McCowan stated that he and his wife were at the Barnes house in August of the dry year, 1901, and Mrs. Barnes stated that Mr. Burham had been there the day before to sell them some fruit trees; that they were there on the Beatty lease and did not want to buy any trees, as they did not know how long they would stay. Cross-examination: "I do not remember any other part of the conversation."

Mrs. J. F. McCowan stated that she and her husband were at the Barnes house one Sunday evening in July or August of the dry year, 1901, and Mrs. Barnes stated that Mr. Burnham had been there to sell them some fruit trees and that she did not buy any trees because her father had not given her the place and she did not know that he ever would; that they were there under the Beatty lease.

Cross-examination: "I do not remember anything further except that she said she would not make any improvements unless her father would make her a deed. I am a sister of the present Mrs. Whitworth."

Steven Marsh stated that he lived close to the farm in controversy and had seen Mr. Whitworth cutting and hauling wood off of that part of the farm which lies next to him

Defendant's Rebuttal: Elias Barnes, recalled, stated that McCowan and his wife were not at his house about the dry year.

The court took the case under advisement and on the following day, October 13, 1910, entered the following: . . .

Then follows a finding of facts and a judgment of the court in favor of the defendants, as prayed in the answers, from which, as previously stated, the plaintiff appealed.

Upon this state of the record counsel for respondents insist that the appeal should be dismissed for the following assigned reason:

"The appeal in this case should be dismissed, because this is an action for possession of land, and. the administratrix has no such interest in the subject of the action as will authorize her to prosecute the appeal in her name as such administratrix. Real estate descends to the heirs, and they only are proper parties in ejectment. The personal representative under order of the probate court may

*Appeal: Real Estate: Revived in Name of Administratrix.*

rent out or sell land for the purpose of paying debts, but there is nothing in this record, or in the motion to revive this case in the name of said administratrix, to indicate that the estate of William Whitworth is not possessed of sufficient personal estate to pay his debts. The law on this subject is so well settled that it is unnecessary to cite all of the numerous cases in point.''

This proposition was presented to this court in the recent case of McQuitty v. Wilhite, 218 Mo. 586, l. c. 591, where the authorities are reviewed and well considered by my learned associate, Judge GRAVES.

The conclusion was there reached that the administrator was not the proper party to prosecute the suit, and after a careful examination of the authorities cited, I see no reason for a departure from that ancient and well established rule.

Adhering to that rule, the result must be that the appeal should be dismissed.

While we very much regret to dismiss appeals upon grounds not going to the merits of the case, yet a most casual consideration of the record in this case discloses the fact that the judgment of the circuit court was right, and that the appeal to this court is totally destitute of all merit; consequently there being no merit in the case, and the appeal being improperly prosecuted, we have no hesitancy in dismissing the appeal, as prayed.

It is so ordered.   All concur.