CORA BELLE DAVIS ET AL. v. JOSEPH H. COOK and LOUIS W. BUNNELL, Appellants, SCHOOL DISTRICT ET AL., Defendants.—85 S. W. (2d) 17.

Division One, July 9, 1935.*

*NOTE: Opinion filed at September Term, 1934, April 17, 1935; motion for rehearing filed; motion overruled at May Term, July 9, 1935.

34

*Rex H. Moore* and *Platt Hubbell* for Louis W. Bunnell.

*Woodruff & Woodruff* for respondent.

HAYS, J.—This suit involves the title to a dwelling house and certain lots in the city of Trenton and an eighty-acre farm situate in Grundy County, owned by Carrie Bunnell at the time of her death on May 1, 1931.

The deceased was married three times: first, to a man named Brunnenstuhl, to whom she bore as her sole issue the plaintiff, Cora Belle Davis; next, to a man named Cook, by whom she had no child but who had children by a previous marriage, among them defendant, Joseph Cook; and last, to defendant Louis W. Bunnell.

Prior to this last marriage and on November 1, 1921, said decedent, then a single woman, executed a will. Thereafter and on February 7, 1924, she and said Bunnell entered into an antenuptial contract, and within a few hours thereafter they were united in marriage. Upon the validity and force of this antenuptial contract the case at bar hinges.

The contract begins by reciting that a marriage is shortly to be solemnized between the parties; that said Dr. Louis W. Bunnell, the first party, owns eight and one-half acres of real estate clear, and in his own right, in Trenton, also $500 in bonds and $1200 in

notes and cash; that said Carrie Cook owns clear and in her own right eighty acres of land in Jackson township, Grundy County, also three described lots in Trenton, and notes in the amount of $2400. The contract then proceeds:

"Now, therefore, in consideration of said marriage each to the other, and the payment of one dollar by Mrs. Carrie Cook to said first party, it is agreed and hereby contracted that said Dr. Bunnell shall not acquire any right, title or interest or estate in and to said real estate or chattels or personal property of said Mrs. Carrie Cook of which she is seized or possessed above mentioned, and that he shall have no interest, right or claim in her said estate, real or personal, as tenant by the curtesy, or by virtue of statute of distribution or by any law whatsover, so that all her said property shall, in case he survive her, go to and be disposed of in like manner as if she had continued single and unmarried, unless otherwise disposed of by will or deed." For like considerations Mrs. Cook assumed identical obligations with respect to Doctor Bunnell's property and released her dower and homestead therein, etc.

The contract was duly signed and acknowledged by the parties and later filed for record in the recorder's office.

The will was admitted to probate, respondent qualified as executrix and proceeded to administer her mother's estate. Within a year from the time of undertaking such administration the plaintiff brought suit in which she sought a decree declaring the will void under the statute (Sec. 510, R. S. 1919) on the ground that it was revoked by the maker's subsequent marriage to Bunnell. Defendant Bunnell's codefendants were joined as being interested parties under said will. The defendants, other than Bunnell and Cook made default. Defendant Cook filed a demurrer which was overruled, and the case was tried as if he had raised the general issue. The appellant filed his separate answer in which he, too, alleged that the will was revoked by the subsequent marriage. The answer set up a claim of dower and quarantine in the lands in suit, prayed a determination of title to the land and partition thereof.

Respondent by reply set up said antenuptial contract in bar; alleged the performance thereof and recognition of its validity by the parties thereto; and that by reason of the contract, the acts and conduct of Bunnell, he is precluded and estopped from claiming any right, title or interest in said property.

The judgment below determined that the will was revoked by the subsequent marriage of the maker and remains a nullity regardless of its having been admitted to probate. And, as both the appellant and the respondent are acquiescing in the decision in that respect, that question need not be considered. The judgment determined that the plaintiff was the sole owner of all property in fee. Defendant Bunnell alone appealed.

The pleadings in the cause make it a proceeding in equity. It being such, it is here for trial anew and in reviewing it we disregard questioned rulings on the admission and rejection of testimony and consider such evidence as is competent, relevant and material, whether admitted or rejected.

The evidence touching additional and essential facts is brief. At the time of entering into said marriage Doctor Bunnell was in his sixty-fifth year and Mrs. Cook was some seven years younger. She had, as already stated, one child, the respondent, then a married woman; he had three children—ages not stated—all of whom, it may reasonably be inferred, had reached their maturity. Her property exceeded his in extent and perhaps in value. It seems that for some reason not shown his children had manifested some hostility toward Mrs. Cook before the marriage, for the Doctor in testifying said that his children had interfered with her before the marriage and that he and she "went into the (antenuptial) contract so that (his children's meddling with the affairs of himself and wife) could never happen again;" that they went into it "at her request and *I agreed with her exactly.*"

At once upon their marriage they went into the occupancy of her dwelling house, the Trenton property in suit, where they continued to live together in the marital relation down to her death. This piece of property had a rental value of $15 a month. No rent, however, was paid or charged. Doctor Bunnell paid the grocery bills and their other living expenses. He paid the taxes on his property and collected the rents thereof. The wife paid the taxes on her property and received the rents of her farm. They kept separate bank accounts. At one time she at his request made two small loans for him. At the time of her death she owned the property in suit and $3600 in personal property. This is the substance of the testimony given by appellant Bunnell in relation to matters previous to the death of his wife. His counsel, however, in putting on his defense, introduced a warranty deed made by the appellant, in the execution of which his wife joined without any specific reason shown in the deed itself or elsewhere. By this deed the eight-acre tract owned by appellant and mentioned in the antenuptial contract was conveyed for the recited consideration of $6250.

The will had been left with Mr. Warden, a lawyer of Trenton. Together with the appellant and the respondent he took the will and exhibited it in the probate court. There he advised the respondent, in the hearing of the appellant, that the will might not be valid but to go ahead and probate the will, qualify as executrix and proceed to administer the estate, and he and Judge Warren advised her that she could later follow whatever course she saw fit about setting the will aside. "Dr. Bunnell said," as testified by this witness, "that

he was not interested in it on account of this prewedding arrangement." The respondent followed that advice.

Mr. Warden, testified, further, that Dr. and Mrs. Bunnell, shortly before her death, were in his office and talked about a "prewedding —nuptial agreement, and I suggested to them at the time that it might be well to put a codicil on that will, but she said it was the way she wanted it, and she told me about the prenuptial agreement —that is Doctor and Mrs. Bunnell mentioned that."

Some three weeks after the probate of the will, in view of a previous inquiry made of him by the respondent as to whether he had been paying rent on her mother's house, she at his request made him a lease of the same, rent free, expiring March, 1932. At this time he had not consulted a lawyer with respect to his rights in his wife's estate. He soon did so and then filed his election to take half of her personal estate, and an application for the allowance of $400 as his statutory absolute property, as widower, payable out of her estate. This latter has been allowed, apparently without contest. There followed in chronological course other matters stated earlier in this recital.

■ The appellant contends on this appeal as he contended in the court below that the contract was void as to the wife for want of consideration, and that there is no estoppel *in pais* barring his right of dower in his deceased wife's real estate. He cites and chiefly relies upon King v. King, 184 Mo. 99, 82 S. W. 101, and cases reviewed therein. The case cited, as were most of the others referred to, was ruled under the jointure statute (now Sec. 334, R. S. 1929). The marriage contract interpreted in the King case lacked both of the two essentials of a legal jointure, namely, a provision out of the husband's property for the wife's support during her natural life, and an expression that it was in satisfaction of her dower. The court, after reviewing our previous decisions touching that subject, held that the instrument interpreted was · neither a legal nor an equitable jointure within the contemplation of the statute and was wholly insufficient to bar the wife's dower. The court made a pronouncement that "When the statutory requisites *are not all found* in the provision by the husband for the wife by will or otherwise and yet it is manifest that the husband did not intend her to have the provision and her dower also, she will be compelled, *in equity*, to elect between them, and this is known as equitable jointure."

It is evident that the contract in suit does not constitute a legal jointure, since there was no provision made by the husband out of his own property for the support of his wife during her natural life. And it may be granted (without deciding, for it is unnecessary to decide) that it was not sufficient as an equitable jointure. The King case, supra, and the line of decisions of which it is a part, do not touch the kernel of the matter before us. We deem it un-

necessary to go into the question of the binding force of such contracts, as dependent upon mutual executory promises of the parties, so long as the promises remain executory. It will suffice to say that the courts of review in this State have followed an early declared public policy in respect of marriage settlements which is not in harmony with the views of the courts of most other jurisdictions.

But not so with respect to such contracts when the executory promises have become executed by the party who was not bound. So even though, as is contended, Mrs. Cook was not bound by the contract for want of mutality therein, in the sense of lack of consideration as to her, it is the generally recognized rule that nevertheless, as the contract has been fully executed by her, the appellant will be estopped from refusing performance on his part on the ground that the contract was not originally binding on her who has performed. [6 R. C. L. 690; Young v. Sangster, 322 Mo. 802, 16 S. W. (2d) 92, by which case the cause at bar is well ruled.]

The Young case was a proceeding quite similar to this one, although the evidence there was not so cogent as the evidence in this proceeding. In that case the evidence was all documentary. It consisted of an antenuptial contract similar to the contract adjudged in the King case, supra, and of three deeds by which real estate belonging to the husband was conveyed, during the lifetime of the wife, to third parties. The deeds were executed by the husband alone and contained the recital that the grantor was "a married man who states that he has a special contract with his wife which gives him right to convey his real estate without his wife's signature."

Of the facts at bar it will suffice to say, in summation, that the contract in suit was made for the mutual benefit of the parties thereto. The husband says even now that "it suited him exactly." A fair inference is that it accomplished some results advantageous to him; it obviated further interference of his children in his affairs—an interference which, if persisted in, might have considerably ruffled the sea of matrimony upon which he was about to embark. It afforded him a home in his wife's property without rent. He managed all his own property and collected the rents thereof, while he accorded his wife the same freedom in regard to her farm. Also he exercised the privilege accorded him under the contract of disposing, for a considerable sum, of his eight-acre property. Indeed, his wife made a present release of her dower right therein by joining in the execution of the conveyance made. Whether she did so pursuant to custom, or at the requirement of the purchaser does not appear. Anyhow no inference adverse to her can reasonably be drawn from her action in that regard. At least it was in keeping with the obligations resting upon her under the contract. The notice arising from the recordation of the contract known to appellant ac-

tually, and to the world constructively, of her executory release of dower in reliance upon his similar release, was emphasized by her actual release by joining her husband's deed in part performance of her obligations assumed by the contract. She (as she believed) preserved her previously executed will, relying and acting, with full knowledge of the appellant, upon her belief in its validity. Possessed of knowledge of all these matters, if he entertained any doubt concerning the validity of the contract, owing to the want of consideration moving to her in that behalf, it was his duty to speak then—or never. He failed to speak. Now, by reason of his knowledge and conduct, it is too late. He was no doubt in good faith all along, as was his wife. She kept the faith. Equity will compel him to do so by lending no countenance to his inequitable claim.

Our attention is called to the incompleteness of the judgment. The appellant, having appealed from it, is in no position to question it, though no duty rested on his counsel to correct it. The duty rested upon the counsel for the successful party, who should have seen to it that it was sufficient in form and substance. The judgment as entered does not dispose of all the parties to the suit or adjudge the costs, nor does it purport to reserve jurisdiction for the sole purpose of the receivership. Under the disposition we shall make of the case the receiver should be required to report forthwith and pass his final accounts. Judgment should then be entered in terms of finality, determining the issues raised, decreeing the absolute and undivided title to the property to be in the respondent, discharging the receiver, and adjudging the costs against the defendants Bunnell and Cook.

The judgment is reversed and the cause remanded with directions to the circuit court for further proceedings in compliance with the views expressed in this opinion. All concur.

---

*NOTE: Opinion filed at September Term, 1934, April 17, 1935; motion for rehearing filed; motion overruled at May Term, July 9, 1935.