E. N. Peterson v. City of St. Joseph, Appellant.—156 S. W. (2d) 691.

Division One, December 12, 1941.

*Homer C. King*, City Counselor, *B. M. Lockwood* and *A. J. Bielby*, Assistant City Counselors of St. Joseph, and *G. C. Sparks* and *J. Harry Latham* for appellant.

956

*Lewis F. Randolph* and *K. D. Cross* for respondent.

BRADLEY, C.—This is an action, conceded to be at law, to determine title to 87.31 acres of land in Buchanan County. The cause was tried to a jury; verdict was that plaintiff "was the owner" of the land in question. Defendant's motion for a new trial was overruled and this appeal followed.

Plaintiff contends that the land was formed by accretion to an island that formed in the Missouri River, or was formed "by the recession or abandonment of its old or former bed by the waters of the Missouri river," and belonged to Buchanan County, and that he got title under a patent to him from the county, issued May 29, 1936. Defendant owned a tract of land, referred to in the record as the old airport, on the north bank of the Missouri River in the St. Joe bend, and contends that the land in question was formed by accretion to the old airport land, and therefore, claims title under the law of accretion.

At the threshold we are confronted with three motions filed by plaintiff, respondent here. These motions are to strike a supplemental abstract filed by defendant, and to dismiss the appeal. The appeal was taken March 1, 1941, and on March 24, 1941, there was filed in this court a certified copy of the verdict. August 29, 1941, plaintiff filed a motion to dismiss the appeal on the ground that the "appellant has not filed in this court any record entry or abstract thereof showing a judgment from which appeal is taken." And in plaintiff's brief, filed August 30, 1941, is a motion to dismiss the appeal on the ground that appellant's brief does not distinctly allege the errors claimed and commingles assignments of error and points and authorities. September 3, 1941, defendant filed the supplemental abstract containing the judgment in the cause which was entered *nunc pro tunc* in the circuit court on August 29, 1941, on defendant's motion. September 4, 1941 (day cause was set for argument) plaintiff filed the motion to strike the supplemental abstract on the ground

that it was out of time and contravened Rule 11 relating to filing and service of abstracts. The motions were taken with the case.

Generally it is the duty of the successful party to see to the preparation of a proper judgment. [Davis et al. v. Cook et al., 337 Mo. 33, 85 S. W. (2d) 17, l. c. 20.] On the other hand, it was the duty of appellant, coming up on what is sometimes called the short form appeal, to file in this court "a certified copy of the record entry of the judgment," etc. [Sec. 1194, R. S. 1939, 2 Ann. Stat., sec. 1028, p. 1310.] See also Rule 11 of this court. It appears in the supplemental abstract that plaintiff, in the circuit court, joined "in the request that judgment be entered" *nunc pro tunc*.

It does not so appear, but it is likely that no one gave any attention to the preparation of a judgment, prior to the appeal, and that the clerk, without consulting either counsel, sent up the certified copy of the verdict. It must be conceded that respondent was at fault in failing to see to the preparation of a proper judgment, and that appellant was derelict in not sooner discovering that no judgment was entered prior to the appeal.

Defendant's (appellant's) brief is sufficiently clear as to assignments for us to understand the complaints made. In the situation, the motions to dismiss the appeal and to strike the supplemental abstract are overruled.

It will not be necessary to set out the evidence. It is sufficient to say that both plaintiff and defendant had substantial evidence tending to support their respective claims as to title.

Defendant assigns error on plaintiff's instructions 1, 2, 3, and 5, and on the refusal of its instructions A and B.

Plaintiff's instruction No. 1 follows: "The court instructs the jury that the issue you are to determine in this case is whether or not the land in controversy was formed as an accretion to the old high banks of the Missouri river along the south line of the defendant's land, or whether or not the land in controversy was formed either as a result of accretion to an island that formed in the channel of the Missouri river, or was formed by the recession or abandonment of its old or former bed by the waters of the Missouri river.

"If said land was formed as the result of accretion to an island in the river or by recession from abandonment of its old or former bed by the water of the Missouri river, as defined in other instructions herein—then your verdict will be for the plaintiff.

"If the land was formed as a result of accretion to the old high banks of the Missouri river, along the south line of defendant's land—then your verdict will be for the defendant."

Plaintiff's instruction No. 1 is challenged on five grounds, viz.: (1) That it does not require a finding "that the island was in Buchanan County or the State of Missouri; (2) that it did not require a finding that the county court of Buchanan County "had found that an island

had arisen'' before issuing the patent; (3) ''in that the jury was instructed that if the accretions formed to an island or part of an island on the Kansas side of the river, the finding should be for plaintiff;'' (4) in that ''it denies to defendant his shore rights as a riparian owner to lands formed to his bank by recession and ignores his right of access to the water;'' and (5) that the instruction is confusing and misleading, omits' factual elements necessary to be found before a verdict could be found for plaintiff, and ''assumes that the county and plaintiff are entitled to all accretions by recession or reliction wherever they occurred.''

There was no dispute about the, land being in Buchanan County. And besides this, defendant in its answer, in effect, alleged that the land was in Buchanan County. Defendant makes no effort to show why the instruction should have required a finding that the county court had found that an island had arisen. Plaintiff's patent, which was in evidence, recites that it had been shown to. the satisfaction of the county court ''that a tract of land has, within the past ten years formed in the old bed of the Missouri river, in sections 6 and 7, township 57 north, range. 35 west, and also in section 12, township 57, north, range 36 west, in Buchanan County, Missouri, by the recession or abandonment of the waters of said stream.'' As we see it, there is no merit to the second complaint on instruction No. 1.

Instruction No. 1 is not susceptible to such construction as claimed in the third complaint, and defendant makes no effort to show how such construction could be made. As stated, defendant's 4th ground of complaint on plaintiff's instruction No. 1 is that it denies riparian rights of defendant and ignores defendant's recession rights; and the 5th ground is that it is confusing, etc., as stated.

Defendant's instructions C, D, E, F, and H, which were given, presented defendant's theory from various angles. Instruction C told the jury that if they found ''that the land sued for was made to and against the said north bank by the gradual and imperceptible deposit of earth, sand and sediment against said bank by the action of the water, and by the gradual receding of the water of said river from said north bank, then the jury must find the issues for defendant.''

Instruction D told the jury that if they found ''that the land in question first appeared above the water as a large bar, made to and against the north shore or bank of the Missouri river, after an overflow and rise of the waters of said river, still, if this bar was so made by the gradual deposit of earth, sand and sediment by the action of the water, and by the gradual receding of the water of said river to the south, it is an accretion, and your verdict will be for the defendant.''

Instruction E was that although the jury might believe that a ''bar was formed in the river,'' and that ''thereafter there was deposited

upon said bar by the waters, earth, sand and other substances, so as to raise the sand higher than where it was first formed or made, still this will not prevent the same from being an accretion to the north shore of the river, provided the jury shall find from the evidence that the land or bar as originally made was formed against and annexed to the said north shore by the action of the waters in receding from said shore and running further south."

Instruction F was that if found that "a low place or slough" was "between the old airport property and the land· in controversy in this action, and that water of the Missouri river have at times passed through" the slough "in time of overflow and high water, still notwithstanding, you shall so find,·you should return a verdict for the defendant, City of St. Joseph, provided you shall further find from the evidence that the land in dispute was originally made to and against the lands described in defendant's deeds as an accretion."

Instruction H was, in effect, a repetition of the others in that it directed a verdict for defendant if found "that said land was formed against the north shore by the gradual receding of the waters of the river from said shore, and the deposit of earth and other substances against said bank."

"Accretions must, as a rule, in their formation preserve uninterrupted contiguity." Therefore, "alluvion cannot become an accretion to land by extending itself until it meets the land, except in cases where the title to the land extends to the center of the stream. For example, if the process is such that an island first arises from the water, and afterwards becomes connected to the land by the addition of accretions to it, the title to the island will not vest in the riparian owner of the mainland." [1 R. C. L., pp. 232-233.]

In Moore v. Farmer, 156 Mo. 33, l. c. 43, 56 S. W. 493, the following instruction was, in effect, approved:

"The court instructs that the Missouri river is a navigable stream and that riparian owners along said river own to the water's edge only—their line expanding as the waters recede and accretions form to the land, and contracting as the waters encroach upon and wash away their land, the line always remaining at the water's edge. But the formation or reliction must be gradual and imperceptible and must be made to the contiguous land so as to change the position of the water's edge or margin. And if it is shown by the preponderance of the testimony in the case that the land in controversy first appeared as an island or formation of soil, sediment or other substances out in the midst of the Missouri river, to which accretions were formed from the deposit of soil and other substances by the waters of said river, until the banks of said island or formation extending northward, united with the main bank of the river, or was separated therefrom by a slough or depression only, then such lands are not an accretion to the main bank of the river. . . ."

Under the law of accretion there is no merit in defendant's 4th and 5th complaints on plaintiff's instruction No. 1. It will not be necessary to separately rule the complaints in plaintiff's instructions 2, 3, and 4. There is nothing in either of them that runs counter to the law of accretion.

Plaintiff's instruction No. 5 follows: "The court instructs the jury that the burden of proving that the land in controversy accreted from the old high bank (shore line of the old airport) of the Missouri river, described in evidence, is upon the defendant, City of St. Joseph."

Clearly defendant's claim of title was an affirmative defense comparable to the defense of adverse possession in ejectment, and the burden was on defendant to establish its claim of title. [Whitworth v. Barnes et al., 256 Mo. 468, 165 S. W. 992; Gray et al. v. Shelton (Mo.), 282 S. W. 53; Eatherton v. Henderson et al. (Mo.), 59 S. W. (2d) 623.]

Defendant's refused instruction A was that if the jury found that defendant owned the old airport land, and that prior to the "formation in the river of any of the land" in question, defendant "dedicated to public use and established by ordinance a wharf or hydroplane landing on said land and the shore of said river, whether it has been as yet used for such or not, then the defendant City of St. Joseph would be entitled to all accretions, bars, battures or islands forming between the said wharf or landing and the thread or midcurrent of the river; and if you find and believe from the evidence that any of the land sued for in plaintiff's petition was formed in front of said wharf or hydroplane landing and between it and the thread or mid-current of the Missouri river as to all such land, accretions or formations, your verdict should be for the defendant."

Among the authorities cited in support of the assignments on the refusal of instructions A and B are 18 C. J., p. 49, sec. 29; p. 108, sec. 126; p. 114, sec. 135; p. 118, sec. 145; 45 C. J., p. 513, sec. 168; 2 Dillon's Municipal Corp. (3 Ed.), sec. 675; 1 Farnham on Waters and Water Rights, secs. 145 and 145a; Coffins et al. v. City of Portland, 27 Fed. 412; Godfrey v. City of Alton, 12 Ill. 29; Kavanaugh v. Baird, 241 Mich. 240, 217 N. W. 2.

The authorities cited do not support instruction A and we do not think there is authority for such instruction. It is stated in 18 C. J., p. 114, sec. 135, that "where land bounded by a watercourse is dedicated to the public use, all accretions to the land so dedicated become subject to the same easement and are held by the same tenure." According to the finding of the jury the land in question was not formed by *accretions* to the old airport shoreline, hence the dedication could not affect plaintiff's ownership of the land.

Instruction B would have told the jury that if they found (1) that defendant owned the old airport; (2) that the dedication for

hydroplane landing, etc. was made; and (3) that prior to the formation of any of the land in question the U. S. Government "caused the installation of a series of dykes and revetments along the bank of the river adjacent to said wharf and landing, intending to prevent the cutting away of the banks and shore line to its land, and intending and causing the filling of the Missouri river from the said north bank (old airport land) to the south across the tract of land being sued for, and extending to or beyond the dykes and revetments, then it is immaterial where or at what point the fillings or accretions, if any, first showed or began to form between the shore line of defendant's tract of land and the dykes and revetments, and any formation or accretions, land or bars, within said dykes and revetments between the defendant's wharf or hydroplane landing and the Missouri river cannot be termed an island, and the County of Buchanan or any grantee of said county can have no claim to any land so formed between the original shore line and the new shore line caused and built as a result of the said dykes and revetments, and your verdict should be for the defendant."

The record shows that the Government did build a somewhat extensive system of dykes and that these dykes, the evidence tends to show, contributed to the formation of the land in dispute, but if the land is an island, formed in the river and is not *accretions* to the old airport land, then it does not belong to defendant, even though the dykes caused the formation or contributed to the formation of the island, after it was formed. [Tatum v. City of St. Louis, 125 Mo. 647, 28 S. W. 1002; Whyte v. City of St. Louis, 153 Mo. 80, 54 S. W. 478.]

The judgment should be affirmed, and it is so ordered. *Hyde* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.